## FARLEY *v.* GATE CITY GAS LIGHT COMPANY.

| 105 | 323 |
|-----|-----|
| 122 | 31 |

1. Though in an action to recover damages for the maintenance of a continuing nuisance the jury return a verdict for only nominal damages, such verdict will not be set aside on the ground that it is contrary to law and evidence, and so small in amount as to show " bias and prejudice on the part of the jury, and is inadequate and too small," where the evidence is conflicting, and there is evidence which authorizes a finding that the premises of the plaintiff have sustained no injury resulting in pecuniary damage to the plaintiff, and that the same have not been rendered substantially uncomfortable and unhealthy for occupancy by herself and family as a residence.

2. In such a case a charge in the following language: "One who owns a lot has a right to have the air which passes over his or her property to be in a natural state, considering the location, situation, and surroundings of the lot," was inaccurate; yet where there was evidence tending to show that the premises of the plaintiff were invaded by foul gases and noxious odors and the soil of her lot permeated with poisonous substances emanating from other sources with which the defendant had no connection, and it appeared that this instruction, when read in connection with the entire charge of the court on this particular branch of the case, clearly instructed the jury that the defendant, while answerable for the existence of any nuisance created by its works, would not be responsible for any

act or conduct of others, or for the invasion of her premises by foul gases, noxious odors, or poisonous substances emanating from other independent sources, such charge is not good cause for a new trial.

3. The charge of the court fully and correctly instructed the jury what damages the former recovery embraced, and also the elements of damage and the measure of the plaintiff's recovery in the present action.

4. Where in the trial of an action to recover damages for a continuing. nuisance the jury find that the plaintiff has suffered no special damage, and yet find that a nuisance exists, a verdict for nominal damages is proper.

5. In the trial of such a case, where it appears that the plaintiff has. previously instituted an action and recovered damages sustained by her by reason of the creation and maintenance of the same nuisance, an announcement made by the presiding judge in open court, in order to properly confine the range of evidence, as to what damages were. embraced or recovered in the former action, and as to what items. of damage might be recovered in the subsequent action, is not cause for a new trial, even though made in the presence of the jury, where it appears that such announcement was made by request of counsel for both parties, that they made no request for the jury to retire, and that the judge in his charge carefully instructed the jury that. they had nothing to do with the admissibility of evidence, or the colloquies on the subject of the admissibility of evidence, but should try the case under the law given them in charge and the opinion they entertained of the evidence admitted; especially will such announcement afford no cause for a new trial where it appears that. the announcement as made is pertinent to the issues involved, and is not itself an inaccurate statement of the law touching the subject. with which it deals.

6. If in such a case the plaintiff also seeks to obtain an injunction to prevent a continuance of the nuisance, a charge in the following language:    "But the plaintiff must show you that the defendant is. not only maintaining a nuisance, but that it will continue to do so in the future, and that it is necessary for the protection of the plaintiff's rights in the future to enjoin the defendant," should not be given, because inaccurate; but, nevertheless, the discretion of the trial judge in overruling a motion for a new trial, on exception taken to such charge, will not be disturbed where there is evidence warranting a finding that the plaintiff had sustained no special damages, and that her premises had not been rendered substantially uncomfortable or unhealthy for occupancy by herself and family as a. residence; and also evidence warranting a finding that subsequently to the institution of the action, but prior to the trial, the defendant had practically abated such nuisance.

Argued May 21,—Decided July 27, 1898.

Equitable petition.    Before Judge Lumpkin.    Fulton superior court.    September term, 1897.

*Longino & Golightly,* for plaintiff.

*Van Epps & Leftwich,* for defendant.

LITTLE, J.　On May 4, 1893, Mrs. Mary Farley filed in the ·city court of Atlanta her petition against the Gate City Gas Light Company, to recover damages from the latter, alleged to have been sustained by her in her person and property, by reason of the maintenance by the defendant of an alleged nui- ·sance.　She showed that she was the owner of a house in the ·city of Atlanta, which she and her family occupied as a dwel- ling ; that there was on the premises a well of pure water, a rich and valuable garden spot on which she raised fruits and vegetables, and that large shade-trees, shrubbery and flowers, which contributed to the comfort of petitioner and her family and to the attractiveness of their home, were also growing on ·said lot.　She showed that while occupying and thus in the en- joyment of her home, the defendant purchased a lot in close ·proximity to that of plaintiff, divided therefrom only by a street twenty-eight feet wide, and that said lot was elevated above the lot of plaintiff ; that the lot purchased by defendant had, before the purchase, been vacant or occupied by residences, and that the defendant, without the consent of petitioner and against her will, placed on the lot so purchased buildings, machinery and appliances for the manufacture of gas, and dug out and con- ·structed wells or reservoirs of large dimensions for the purpose ·of holding gas and storing same for distribution over the city for illuminating purposes ; that these reservoirs were filled with water, and over them were placed large holders supported by framework, and adjusted so as to move up or down, according to the amount of gas therein contained, and to supply the neces- ·sary pressure for the distribution of gas.　In excavating said wells ·or reservoirs, the defendant utilized the dirt in building a wall or embankment some twenty feet high on the line of its lot adjoining the street which divides the plaintiff's lot from that of the defendant, the wall or embankment and tops of the reser- voirs being some twenty feet higher than the surface of petition- ·er's lot.　The largest reservoir is situated just across the street and within about forty feet of the residence and well of peti- tioner.　The reservoirs have capacity for many thousand gal-

lons of water, are kept nearly full all the time, and there is no outlet for the escape of water except by an overflow-pipe at the top of one of the reservoirs, or by surface leakage, absorption through the walls, or by evaporation. Between the walls of the reservoirs and the walls of the holders there is a space of two to three feet around the same, which is open and never closed or covered, and in which filth can fall and accumulate, and when so fallen there is no way to get it out, except by removing the water, which is never done. This water, by reason of long standing and accumulations of filth and contact with the gas or other causes, has become stagnant, impure, odious and offensive, from which petitioner and her family suffer annoyance. There escape and issue from the plant and works, and from the reservoirs and holders, unpleasant, offensive, noxious, and unhealthy odors, gases, and vapors, which permeate and contaminate the atmosphere about the premises of petitioner, producing headache, coughs, nausea, stupidity, dullness of feeling, and depression of spirits, and otherwise injuring the health of petitioner and other members of the family, rendering her home almost uninhabitable. Prior to the erection and operation of the works, there was rarely ever any sickness in the family, but since that time, to wit the 15th day of May, 1889, the health of petitioner and other members of the family has been seriously affected, and there have been two cases of fatal sickness in the family. By reason of the escape, leakage, and drainage from the reservoirs of the impure matter and noxious gases which have seeped through and percolated the soil of her lot, her well of water has been rendered impure and wholly unfit for use, and plaintiff has had to abandon same; and in consequence of the impurity of the atmosphere and pollution of the soil, the trees, shrubbery, flowers, etc., on the petitioner's premises, are dying and have died, depriving petitioner and family of pleasure and comfort, and for the same reason vegetation will not grow and thrive upon the premises, and petitioner has had to abandon her garden spot, which contributed largely to the support of herself and family, and from which she derived considerable income. She alleged that the gas contained in the holders was explosive and dangerous and a constant menace or source of annoyance

and anxiety to her. The damage to her and her property is gradually and steadily increasing, growing more and more injurious, burdensome, and damaging. The erection, maintenance, and operation of the plant, etc., is a nuisance, and the hurtful, injurious, and damaging character and effects thereof have steadily and continuously increased from its beginning to the present time. She showed that the noxious and unhealthy odors, gases, and vapors have continuously increased in volume and virulence, and the leakage, drainage, etc., from the reservoirs, have constantly increased in quantity and in impurities, forming and constituting a growing and continuous nuisance, to the great damage of petitioner. When the defendant is engaged in manufacturing gas, great volumes of soot, smoke, etc., issue from its works, which permeate the atmosphere in and around petitioner's premises, settling in and on her house, furniture, etc. Her property by reason of all of said acts has been rendered almost valueless, the market and rental value thereof being decreased in named sums, and she has suffered special damage in all the ways aforesaid. The defendant has maintained the nuisance from the 15th day of May, 1889, to the filing of the petition, and the same has not been abated. On the trial of the cause in the city court, the jury were instructed that if they should find, under the pleadings and evidence, that the defendant had maintained the nuisance as charged, they would be authorized to render a verdict in her favor for all appreciable damage to her property or the enjoyment thereof as a residence, during the four years next preceding the filing of the suit, which resulted by reason of the creation and maintenance of such nuisance. The jury rendered a verdict for one thousand dollars in favor of the plaintiff. The defendant made a motion for a new trial, which was overruled, and, upon writ of error to this court, the judgment of the court below was affirmed. 95 *Ga.* 796.

On the 14th day of August, 1894, Mrs. Farley filed in the superior court of Fulton county her equitable petition against the Gate City Gas Light Company, in which, after referring to the previous action brought by her, she alleged that, although by that action it was established that the defendant was

maintaining a nuisance as against her, it did not on the 4th day
of May, 1893, and had not since that day and up to the time
of filing the present petition, abated said nuisance, but that it
was continuing to maintain the same.    She alleged that in that
suit she was allowed to recover damages only to the date of
bringing the same, and did not recover anything either for dam-
age to person or property from the date of the filing of the for-
mer suit to the present date.    She charged that it was the duty
of the defendant to have abated the nuisance, but it failed and
refused to do so, but maintained said nuisance from the 4th day
of May, 1893, to the date of filing the present petition, know-
ing the same was wrong and dangerous to petitioner's health
and damaging to her property, and that therefore the wrong
which defendant was perpetrating was wilful and should subject
it to punitive or exemplary damages; more especially from the
date the verdict was rendered in the first suit.    She alleged that
she had sustained four thousand dollars damages to her person
and property, the elements of damage outlined being injury to
her well of water, shade-trees, shrubbery, flowers and fruit-
trees, garden, market and rental value of her home, its depre-
ciated value to her as a residence, and physical suffering in her
person from the effects of the nuisance.    She alleged that said
nuisance was a continuous and growing one; that the damages
inflicted were irreparable; that the discomfort and ill-health re-
sulting from such nuisance could not be fully compensated in
money; that no jury could or would fully appreciate and un-
derstand the extent of her suffering and discomfort from the
nuisance; and for this reason she prayed that the company, its
agents and employees be enjoined from operating said works,
and also from in any way allowing gas, foul water, and other
poisonous substances from said works to go upon her premises,
etc.    To this petition the defendant, among other things, filed a
plea in abatement, averring that at the commencement of this
action, to wit August 14, 1894, there was and now is another
action brought in the city court of Atlanta, between the same
parties and for the same cause as that set forth in the petition,
which is now in the Supreme Court for final determination.
Wherefore it prayed that the present action be abated and dis-

missed. On the trial of the case the jury returned a verdict in favor of the plaintiff for five dollars. The plaintiff made a motion for a new trial, which was overruled, and she excepted.

1. The plaintiff contends that the verdict is contrary to law and to the evidence, and is so small in amount as to show bias and prejudice on the part of the jury, and is inadequate and too small. There was evidence in the record from which the jury could have found that the defendant was not, at the time of the filing of the petition, maintaining a nuisance, and had not maintained such between the date of the institution of the former action and the filing of the present petition. On the other hand, there was evidence from which they could have found that it was maintaining and had so maintained such nuisance. There was also evidence from which they could have found that the plaintiff had suffered damage by reason of a depreciation of the market and rental value of her property, and from the annoyance and discomfort sustained in the occupancy of her house, since the filing of the former suit. On the other hand, there was evidence from which they could have found that no special damage had been sustained by her, either by reason of a depreciation in the market or rental value of the property, or by the rendering of the same substantially uncomfortable for occupancy by her as a dwelling. While the verdict and judgment in the former action adjudicated that at the time of its commencement the defendant had maintained and was maintaining a nuisance, it is obvious that it could not be thereby adjudicated that the defendant would continue to maintain the same in the future. It is undoubtedly true, however, that the verdict and judgment rendered in the former suit included all damages which accrued to the plaintiff prior to the bringing of that suit, growing out of the nuisance for which the suit was brought, and that for such damages there could be no recovery in the present action. While damages can not be awarded on the assumption that the nuisance is to be continued permanently (Uline v. N. Y. Central R. Co., 101 N. Y. 98), yet, in actions for nuisances, as in other actions for torts, the measure of damages is compensation to the plaintiff for the actual injury inflicted. 5 Am. & Eng. Enc. L. 38. Therefore, while a recov-

ery may not be had for prospective damages which might be inflicted were the nuisance continued, yet where the damages inflicted by the nuisance while in existence are of a permanent character, and go to the entire value of the estate affected by the nuisance, a recovery may be had of the entire damages in one action. Wood's L. Nuis. § 856, and authorities cited; 3 Sedg. Dam. § 947, and authorities cited. Where the injury goes either to the market or rental value of the premises, the difference in the market or rental value before the nuisance existed and such value after the nuisance is created is the measure of damage. Peck *v.* Elder, 3 Sand. (N. Y.) 156; Dana *v.* Valentine, 5 Met. (Mass.) 105; McKnight *v.* Ratcliffe, 44 Pa. St. 156; Thayer *v.* Brooks, 17 Ohio St. 489; Emery *v.* Lowell, 109 Mass. 197; Omara *v.* R. Co., 38 N. Y. 445; Frank *v.* Railroad Co., 20 La. Ann. 25. Thus, if the plaintiff's premises had sustained permanent damage by reason of the existence of the nuisance prior to the bringing of the first action; if trees, shrubbery, flowers, etc., had been killed or injured; if the well of water had been injured and rendered wholly or partially useless; or if the soil had been rendered wholly or partially unfit to produce vegetation, or its market value diminished, or any other permanent injury done to the plaintiff's lot or premises, the verdict in the former action must be presumed to have covered such damages, and therefore no second recovery for the same injury could be had. Where the nuisance itself is permanent in its character, and the injury is complete, all damages, both past and prospective, are recoverable and indeed must be recovered in one action, as no subsequent action therefor can be maintained. 16 Am. & Eng. Enc. L. 986-7, and authorities cited; 2 Wood on Nuis. (3d ed.) § 865; Powers *v.* Council Bluffs, 45 Iowa, 652. While, therefore, the plaintiff was entitled to recover in the present action for any damages resulting to her, either by reason of depreciation in the market value of her premises or the rental value thereof, or for injury to shade or fruit trees, flowers, shrubbery, vegetation, or fertility of soil, which were caused by the existence of a nuisance maintained by the defendant since the filing of the former suit, as has been said, there was evidence from which the jury might have found that no such

damage had been in fact sustained. Analyzed, the verdict of the jury in this case necessarily means that the plaintiff had sustained no special damage, although the defendant had maintained as against her a nuisance. The verdict establishes, that such nuisance was being maintained at the time of the filing of the petition, or at least had been maintained at some time between the time of the commencement of the former action and the institution of the latter. The jury therefore properly awarded nominal damages; for if a nuisance is shown to exist, the law imports damages for an injury to the right, and at least nominal damages may be recovered to protect the right. 2 Wood on Nuis. (3d ed.) §866, and authorities cited. It can not be said, therefore, that the verdict of the jury was contrary to law or to the evidence, nor that it was so small in amount as to be inadequate, or to show bias and prejudice on the part of the jury.

2. The plaintiff in error insists that the court erred in charging the jury as follows : "One who owns a lot has a right to have the air which passes over his or her property to be in a natural state, considering the location, situation, and surroundings of the lot." The plaintiff contends that this part of the charge, taken in connection with the entire charge of the court, tended to confuse the jury and make them believe that other unpleasant surroundings of the property would justify the defendant in creating stenches which would not otherwise be justifiable; that it tended to lead the jury to believe that the gasworks being near the plaintiff's premises should be considered and should to some extent justify a state of atmosphere not otherwise natural and pure; that it also tended to make the jury believe that a pollution of the air by other gas-works or other surroundings would justify the defendant in increasing the same or adding to the pollution to some extent, and yet not render it liable for such contribution. Taken in the abstract, this charge would not be a correct view of the law touching the subject with which it purports to deal. Irrespective of the location, situation, or surroundings of plaintiff's premises, no one has a right to inflict a nuisance thereupon. Even if such premises were infected with nuisances from other sources, this could

be no excuse for the creation or maintenance of a nuisance by the defendant, or for any act which in a substantial way contributed to a nuisance created by the joint acts of others. Wood, Nuis. §§ 477, 480, 689, 698. When, however, the extract from the charge quoted is read in connection with the entire instructions of the court on this particular phase of the case, it will readily be seen that the apparent inaccuracy of the charge does not in fact exist. The evidence tended to show the existence of another gas manufacturing establishment in the vicinity of plaintiff's residence, and also the existence of a sewer just to the rear of the lot, and that gases and odors from these pervaded plaintiff's premises. The charge of the court, while making defendant answerable for the existence of any nuisance created by its works, properly instructed the jury, that the plaintiff would only have a right as against this defendant to have the air in a state in which it would otherwise be if the defendant allowed no foul or deleterious gases to escape from its works and go upon the premises. In view of the evidence tending to show that other nuisances existed, it was proper to thus guard the charge; for while the defendant was answerable for any nuisance which it might create, it was not called upon to insure the plaintiff against the existence of nuisances from other sources. It was not required to purify the air which passed over her premises, but was forbidden to foul it.

3. Another ground of the motion for a new trial is, that the court erred in the charge, taken as a whole, in that it failed to point out to the jury just what the former recovery embraced, and left them in doubt as to whether the plaintiff had recovered in the former suit all damages which would accrue in the future, etc. A reference to the entire charge, however, shows that the jury were fully instructed that the plaintiff could not recover for any permanent damage sustained by the property prior to the bringing of the first action, but that she could recover for any and all damage sustained during the interval between the commencement of the first action and the filing of the present petition.

4. It is alleged that the verdict of the jury was contrary to the charge of the court, in that it found only nominal damages,

when there was no charge by the court authorizing the finding of merely nominal damages, and no reference to nominal damages in the court's charge. This is equivalent to an exception that the verdict is contrary to law. As has been heretofore shown, if the jury found that a nuisance existed and that no special damage had been sustained, a verdict for nominal damages was proper.

5. During the progress of the trial, the presiding judge, in open court and in the presence of the jury, made the following announcement: "Counsel have introduced in evidence the record of a former suit in this case, including the brief of evidence, the charge of the presiding judge on the trial of that case, and having invoked from the judge a ruling for their guidance in the future progress of this case, and as a means of saving time and of avoiding continued rulings as points might arise, it has been contended by counsel for plaintiff that they are entitled to recover for the diminution of the rental value of the property since the last verdict, and also for any trees killed, or similar injury since the filing of the former action; they further contend that diminution of the salable value of the property is an element for the consideration of the jury in estimating their damages. Counsel for the defendant contends that all damage for permanent injury to the freehold was included in the former action and recovery, and can not be recovered again, and that the injury to the occupancy, or the value of the occupancy of the place since the former suit was filed, is the limit of the recovery. I hold that the former recovery included all injury for which suit was brought and which was done or caused by the action of defendant up to the time of the filing of that suit, except what had been barred by the statute of limitations. I hold that in that suit was included diminution of the market value; that it also included all the acts or conduct of the defendant up to that time which resulted in the killing of the shade-trees or the like, and all diminution of the rental value up to that date. I therefore hold, and shall so charge the jury, that there can not be in this action a recovery for the diminution in the market value, because it was covered by the former suit; and if it were not so covered, it would not be an element for re-

covery in successive suits for a continuing nuisance. I further hold that there can be no recovery in this case for trees killed, or sterility of soil, or permanent diminution in value of the real estate caused by the conduct of the defendant prior to the bringing of the former suit. I think there can be recovered damages for the killing of trees, shrubs, and the like, if it be shown that this destruction resulted, not from what had occurred prior to the bringing of the former suit, but from the projection of noxious gases, foul waters, or the like, upon or over the property of the plaintiff since the former action was filed. I shall charge the jury that the burden of proof rests upon the plaintiff in this case. I further think, and so hold, that any diminution in the rental value which may have arisen from the conduct of the defendant since the bringing of the former suit is a proper element in estimating the damages. If it appears that the occupants of the premises have been made sick; or an injury to health, or discomfort in the occupancy of the premises has arisen from the continuation of the nuisance since the former action was brought, I think this also a proper element or circumstance for the consideration of the jury in determining the damages, including under the term 'occupancy of the plaintiff' the entire occupancy of the plaintiff or her family as a place of abode or residence. These I think are the elements of recovery of damages which may be recovered if sustained by the evidence. This, I think, so far as now presented to me by counsel, covers all the points of contest touching the damages, except on the question of punitive damages, counsel for plaintiff announcing that they expect to contend for punitive damages, and counsel for defendant stating they will resist such damages. I will pass on that in my charge." Counsel for plaintiff in error contend that the judge erred in making this announcement in the presence of the jury, because he announced that the plaintiff had recovered in the former suit permanent damages to the realty, and had recovered for diminution in the market value thereof, when in truth the charge of the court in the former suit positively limited the recovery to four years as to all causes and did not allow such recovery. They contend that the announcement had a tendency to and did

prejudice the jury against the plaintiff, and led them to believe that the plaintiff had sued for and recovered in the former suit permanent damages to this property; that the announcement led the jury to believe that the plaintiff had already recovered enough of the defendant, and kept them from passing on the issue as to what the plaintiff had been damaged by the continuance of the nuisance for the time sued for; that it did not set forth correctly the issues which had been decided in the former suit, but assumed as a whole that the plaintiff had recovered more than the charge in the former suit had allowed the jury to give plaintiff. Even if, for any of the reasons contended by counsel for plaintiff in error, this announcement contained error, it will be seen, from the following explanatory note of the court, that the jury could not have been misled or affected thereby. This explanatory note says: "In the course of a discussion arising on the offer in evidence of the petition, charge, and brief of evidence in the former trial, counsel on both sides asked the court to make an announcement indicating his views, and the admissibility of the evidence was involved, and at their instance he did so, as set out in the announcement made. This was not a charge to the jury, but was said to counsel in response to their request. The jury were present, but neither side objected nor asked that they retire. When the court came to charge the jury, he warned them that they had nothing to do with the admissibility of evidence or the colloquies on the subject of the admissibility of evidence; but should try the case under the law as given them in charge, and the opinion they entertained of the evidence admitted (all of which will appear in the general charge)." It must be clear that there was no error in this announcement. *Claflin* v. *Continental Works*, 85 *Ga.* 28. There certainly could be no recovery for permanent physical injuries sustained by the property by reason of the existence of the nuisance prior to the filing of the present action, nor could there be a recovery for diminution in the market value of the premises which occurred prior to that time. There is a distinction between permanent physical injuries to property, and a diminution in the market value thereof. The mere existence of a nuisance might never inflict a physical in-

jury upon property, and yet materially depreciate its market value. It might never affect the water, the soil, trees, shrubbery, or other vegetation; and yet, by reason of detracting from the comfortable occupancy of the premises, the market or rental value thereof might be greatly diminished. The jury could not give damages for a shrub or tree that might be killed, or a well of water that might be ruined if the nuisance continued, nor for the loss of rents which might occur in that event, but they could readily and legitimately calculate that the market value of the premises without the nuisance is so much, and its market value with the nuisance so much, and award damages accordingly, without reference to whether the nuisance should continue or not. If it should continue, the plaintiff has recovered the difference between its market value without the nuisance and its market value with the nuisance, and therefore is not hurt in that respect by a continuance of the nuisance. The measure is not for the time the nuisance will continue, but the difference between its value without and with the nuisance. See authorities cited above.

6. Lastly, the plaintiff in error contends that the court, in instructing the jury with reference to the right of the plaintiff to have an injunction, erred in charging them as follows: "But the plaintiff must show you that the defendant is not only maintaining a nuisance, but that it will continue to do so in the future, and that it is necessary for the protection of the plaintiff's rights in the future to enjoin the defendant." The plaintiff also contends that the whole charge of the court as to the question of injunction had a tendency to lead the jury to believe that the court did not think an injunction should issue, and presented the reasons why it should not issue more forcibly than the ones why it should, and required too much proof of the plaintiff in order to allow the jury to grant an injunction. The extract from the charge of the court quoted above does not seem to be a correct view of the law touching the subject with which it deals. Our code declares that: " Where the consequences of a nuisance about to be erected or commenced will be irreparable in damages, and such consequences are not merely possible, but to a reasonable degree certain, a court of equity

may interfere to arrest a nuisance before it is completed."
Civil Code, § 3863. In order to obtain an injunction, it must
be shown that the injury complained of as present or impend-
ing is such as, by reason of its gravity or its permanent charac-
ter, or both, can not be adequately compensated for in damages.
The injury must be either irreparable or continuing. 16 Am.
& Eng. Enc. L. 959. The injury must be such as is not sus-
ceptible of adequate pecuniary compensation in damages, or
one the continuance of which would cause a constantly re-
curring grievance. 1 High on Inj. § 739; New York *v.*
Mapes, 6 Johns. Ch. 46; Mohawk & H. R. Co. *v.* Artcher, 6
Paige, 83; Dana *v.* Valentine, 5 Met. (Mass.) 8. A court of
equity exercises its jurisdiction to prevent a nuisance. There-
fore, where the wrong has been committed, it will not exercise
its jurisdiction, unless to prevent its repetition, or where the
nuisance itself is continuing. 10 Am. & Eng. Enc. L. 832,
par. (d), and authorities cited in footnote 2. The interference
of courts of equity by way of injunction is undoubtedly founded
upon the ground of restraining irreparable mischief, or of sup-
pressing oppressive and interminable litigation, or of prevent-
ing multiplicity of suits. There must be such an injury as
from its nature is not susceptible of being adequately compen-
sated at law, or such as from its continuance or permanent mis-
chief must occasion a constantly recurring grievance, which
can not be otherwise prevented but by an injunction. 2 Story's
Eq. Jur. § 925, and authorities cited. It is a well-settled doc-
trine that equity will restrain a private nuisance at the suit of
the injured party. This remedy will not, however, be granted
in every instance of alleged nuisance. The present or threat-
ened injury must be real, not trifling, transient or temporary;
it must be one for which, either on account of its essentially
irreparable nature, or its repetition or continuance, the legal
remedy of damages is inadequate. The equitable jurisdiction
is based upon the notion of restraining irreparable mischief, or
of preventing vexatious litigation, or a multiplicity of suits.
3 Pomeroy's Eq. Jur. § 1350, and authorities cited; Wood's
L. Nuis. § 769. By irreparable injury is not meant such in-
jury as is beyond the possibility of repair or beyond possible

compensation in damages, nor necessarily great injury or great damages; but that species of injury, whether great or small, that ought not to be submitted to on the one hand or inflicted on the other, and which, because it is so large on the one hand or so small on the other, is of such constant and frequent recurrence that no fair or reasonable redress can be had therefor in a court of law. Wood's L. Nuis. §770. By continuing nuisance, and constantly recurring grievance or permanent injury, is not meant a constant and unceasing nuisance or injury, but a nuisance which occurs so often and is so necessarily an incident of the use of property complained of, that it can fairly be said to be continuing, although not constant or unceasing. Wood's L. Nuis. § 772. The true test would seem to be, therefore, not whether the defendant intends in future to maintain the nuisance, but whether the nuisance so maintained by it is in fact of such a character as calls for the issuance of the writ. What the defendant intends to do could not be an issuable fact.

Under the facts of this case, however, it does not seem that this error in the charge should work a reversal of the judgment. By their verdict the jury found that the property of the defendant had sustained no special damage. The plaintiff introduced no evidence tending to show that she or her family had been sick as a result of the nuisance, and the jury found that she was only nominally affected in her comfortable occupancy of the home. There was evidence tending to show that the defendant had, since the commencement of the suit, torn down and removed its machinery from the plant, ceased entirely manufacturing gas there, and only used the reservoir for the storage and distribution of gas manufactured at a distant point and conveyed there through pipes. There was evidence from which they could have found that this was an abatement of the nuisance, and that there was no danger of a recurrence thereof at this point. If this were true, the injunction should not be granted. 2 Wood on Nuis. (3d ed.) § 800. The case falls under that class of cases where an interference by the writ of injunction is refused on the ground that the damage sustained is merely nominal and trifling in amount. 16 Am. & Eng. Enc. L. 959; Wood's L. Nuis. § 771; 1 High on Inj. § 740. It

appears that the jury viewed the premises, and, as has been said, that they found no special damage; .that the plaintiff's health was not involved, and that she was only nominally affected in the use and occupancy of her home.   The damage to the plaintiff being merely trifling, as shown by the verdict of the jury, and there being uncontroverted evidence that the defendant had, since the filing of the suit but before the trial, torn down and removed all of its machinery and ceased manufacturing gas on the premises, and there being also ample evidence authorizing a finding by the jury that in so doing the defendant had practically abated the nuisance, this court is unable to say that an injunction should be granted in any view of the case, and at least does not feel authorized, under the facts of this case as they are presented in the record, to overrule the discretion of the presiding judge in refusing to grant a new trial because of the inaccuracy of the charge above quoted.

*Judgment affirmed.   All the Justices concurring.*