## CENTRAL OF GEORGIA RAILWAY COMPANY *v.* AMERICUS CONSTRUCTION COMPANY.

1. Equity will interfere to enjoin a nuisance only when the injury is irreparable, or one the continuance of which will cause a constantly recurring grievance.
2. In order that notice to an agent may be effectual as notice to his principal, the subject-matter of the notice must be connected with the agency.

3. Notice to an alienee of property causing a nuisance, that he will be held responsible for any damages subsequently caused by it, is tantamount to a request to abate it.

4. The declarations of an agent are not admissible against his principal when it does not appear that they were made in reference to a matter within the scope of the agency.

5. Where there is no equity in the case, there should be a general verdict, and not a special finding of facts by the jury upon questions submitted by the court.

Argued May 4,—Decided October 13, 1909.

Equitable petition. Before Judge Littlejohn. Sumter superior court. August 4, 1908.

The Americus Construction Company brought an action against the Central of Georgia Railway Company, the substance of the petition, as here material, being briefly as follows: The plaintiff's planing-mill and lumber-yard used in connection therewith, situated in the city of Americus, adjoins the right of way of the defendant. Within a few feet of plaintiff's lumber yard defendant maintains a culvert under its track, through which Town Creek flows. This culvert was constructed by the Southwestern Railroad Company, the lessor of defendant. "The culvert was so constructed as to change the course of the creek and make it, in going through the culvert, run in a course a little west of north." "Forty-three feet below this culvert the track, on a trestle twenty-five feet long and about thirteen feet high, crosses Jackson street in said city of Americus." "During the winter and spring months when there are bold rainfalls the culvert is not sufficient to carry off the water that flows down Town Creek; and on account of this, and also on account of the sharp turn in the course of the creek, caused by the way the culvert is constructed, the water is obstructed and is caused to pond up and overflow the banks of the creek a great way, and it is frequently the case the water runs out of the banks of the creek and crosses under the trestle on Jackson street." "On or about May 12, 1903, at which time it rained, on account of the inadequate culvert as above set out and the obstruction it occasioned, the water backed over the premises of petitioner, covering a part of the yard four feet deep in water," thereby injuring specified property of the petitioner in stated amounts, and causing petitioner to discontinue its business for four days at a given cost and expense. "On January 22, 1906, a rain came, and, on account of the inadequate culvert above set out and the obstruction occasioned

thereby, said Town Creek again overflowed petitioner's premises to a depth of four feet," occasioning injury to specified property of petitioner in given amounts. "8. Petitioner shows that prior to the damage on January 22nd, 1906, petitioner had notified said Central of Georgia Railway Company of this nuisance and requested that it should abate the same, but said request was unheeded. 9. Petitioner shows that as above shown, when the water would back up over the premises of petitioner, the greatest portion would run under the trestle on Jackson street, thereby making this opening an additional outlet for the water backed on petitioner's premises. Petitioner shows that about April 1st, 1906, said Central of Georgia Railway Company erected a stone wall on each side of the roadway on Jackson street, leading from the creek after it had passed under the track of defendant company back to each end of the trestle spanning Jackson street, said wall being five feet high, and said railroad company has filled in between these walls with dirt, and as the same is now arranged it will be almost impossible for any water to escape from this outlet, and in all future rains the water will rise higher on petitioner's premises and cause greater damages to its property, and the same is a nuisance to petitioner's property. Wherefore petitioner prays that said Central of Georgia Railway Company be enjoined from continuing said culvert in its present condition, and also from diverting and changing the course of Town Creek at the point where it crosses the right of way of said company, and also from continuing the obstruction in the way of water running under defendant's track along Jackson street, and that petitioner have judgment against said Central of Georgia Railway Company for the injuries occasioned as aforesaid, and that petitioner have such other and further relief as the premises warrant and demand," and that process issue, etc.

At the appearance term the defendant demurred to the eighth paragraph of the petition, on the ground that it did not allege with sufficient certainty how the defendant was notified of the alleged nuisance, or to whom, when, or how notice was given. At a subsequent term of the court the petitioner amended the eighth paragraph as follows: "That petitioner notified said Central of Georgia Railway Company of the existence of the nuisance, as set out in the original petition, prior to the damage occur-

ring in May, 1903, above set out, by writing a letter addressed to the superintendent of the Southwest division of said Railway Company. The date of the letter is not now remembered, plaintiff not having kept a copy of the same, in which letter said company was requested to abate same, and petitioner shows that the agent of said company, Mr. S. A. Pruitt, came to the place, and petitioner through its agents and employees talked over the matter with said S. A. Pruitt, agent aforesaid, and again notified him of the existence of said nuisance and requested that it should be abated." When the petition was thus amended the defendant filed what is termed an amendment to its demurrer, the substance of the amendment being, that the allegations of the petition were not sufficient to authorize the relief prayed for; that they show that petitioner has an adequate remedy at law, and that they are not sufficient to authorize the injunction prayed for; that the prayers are not for injunction against any threatened action on the part of defendant, but the relief asked is in the nature of a mandatory order for the abatement of an alleged nuisance, and a court of equity has no power to grant such relief. There was a special demurrer to so much of the amendment to the petition as referred to conversations with and notice to Pruitt, the agent of defendant, as to a nuisance and the abatement thereof, as it was not alleged that he, as such agent, had anything to do with the construction, repairs, or keeping up of the track or culverts of the railroad, or any power over nuisances maintained by the defendant. All the demurrers were overruled. The defendant filed exceptions pendente lite, assigning error upon such rulings. During the trial and after argument of the case had begun, the judge, without the request of either party, prepared certain questions to be propounded to the jury, and in his instructions to them submitted such questions and directed the jury to answer them, instead of finding a general verdict. Upon the answers of the jury to these questions, as shown by their verdict, the court decreed that the plaintiff recover of the defendant $998 principal, with interest, etc.; and further decreed, "that the culvert of the defendant company, described in plaintiff's petition, is a nuisance, and said defendant . . is hereby enjoined from maintaining and continuing said culvert in its present condition, at the point where Town Creek crosses the right of way of said

Central of Georgia Railway Company." The defendant filed exceptions pendente lite to so much of the decree as enjoins it from maintaining and continuing the culvert in its present condition at the point where Town Creek crosses defendant's right of way, upon the grounds, (1) that the legal effect of the findings of the jury was to authorize only a judgment for the damages found; (2) that the granting of such injunction was mandatory. The defendant also moved for a new trial, which motion was overruled, and it excepted, and in its bill of exceptions assigns error upon its exceptions pendente lite and upon the refusal of a new trial. In one of the grounds of the motion for new trial error was assigned upon certain questions propounded by the court to the jury.

*E. A. Hawkins* and *J. B. Hudson,* for plaintiff in error.

*R. E. Lee* and *Shipp & Sheppard,* contra.

FISH, C. J. (After stating the facts.)

1. The demurrer to the injunction feature of the petition was general and, therefore, could be urged after the appearance term. The question then is, should it have been sustained? Our Civil Code provides: "An injunction can only restrain; it can not compel a party to perform an act. It may restrain until performance." §4922. Section 3863 declares: "Where the consequences of a nuisance about to be erected or commenced will be irreparable in damages, and such consequences are not merely possible, but to a reasonable degree certain, a court of equity may interfere to arrest a nuisance before it is completed." In *Goodrich* v. *Georgia Railroad & Banking Co.,* 115 *Ga.* 340 (41 S. E. 659), after considering former adjudications of this court on the subject, it was held: "1. While under the code an injunction which is purely mandatory in its nature can not be granted, the court may grant an order the essential nature of which is to restrain, although in yielding obedience to the restraint the defendant may incidentally be compelled to perform some act. 2. Where one wrongfully diverts a stream from its natural channel, and thus prevents it from flowing upon the land of a lower proprietor, the court may, at the instance of the latter, grant an injunction to prevent the owner of the land above from diverting the water from its natural course, although the effect of the order may be to require the defendant to destroy a ditch, or to do other acts

necessary to restore the water to its natural channel; and this is true although the diversion of the water was complete at the time the application for injunction was made, when it appears that the same was promptly made and there was no unnecessary delay." After announcing the rule stated in the first headnote, just quoted, Mr. Justice Cobb, delivering the opinion, said: "Under no other view than this could the decision of this court in *City of Atlanta* v. *Warnock,* 91 *Ga.* 210 (18 S. E. 135, 23 L. R. A. 301 44 Am. St. R. 17), ever have been rendered. In that case it was alleged that the City of Atlanta was maintaining manholes in its system of sewerage in such a condition as to allow the escape of noxious gases, and an order enjoining the city 'from continuing said manholes in such condition as to allow the escape of noxious gases' was passed. This order could not have been complied with in any other way than by the city authorities performing some positive act having the effect to prevent the flow of noxious gases. While the court would have had no right to require the city to construct and maintain manholes of a given character and description, because an order to this effect would have been purely mandatory in its nature, it did have a right, in the exercise of its power to restrain, to prevent the continuation of the manholes that were in use in their then condition, notwithstanding the effect of this restraint would be to compel the city authorities to perform some act in reference to the manholes which would have the effect to prevent the escape of noxious gases." The first headnote in the *Goodrich* case was quoted in *Macon &c. Railroad Co.* v. *Graham,* 117 *Ga.* 555 (43 S. E. 1000). See also *Mayor &c. of Waycross* v. *Houk,* 113 *Ga.* 963 (39 S. E. 577); *Brown* v. *Atlantic &c. R. Co.,* 126 *Ga.* 248 (55 S. E. 24). In 1 High on Injunctions, §2, it is said: "Courts of equity rarely interfere to command the doing of a positive act, but the same result is obtained by framing the injunction in an indirect form and prohibiting the defendant from doing the reverse of what he is desired to do."

Under the view we take of the petition in the present case, however, we do not deem it necessary to decide whether the equitable relief sought therein is of a purely mandatory character; for if it be granted that it is not, then, in our opinion, the demurrer should nevertheless have been sustained. The foundation for the interference of equity in restraint of nuisances rests

in the necessity of preventing irreparable mischief and multiplicity of suits. The principles governing courts of equity in the exercise of this jurisdiction are closely allied to those which control their action in restraining trespasses. The distinction between trespass and nuisance consists in the former being a direct infringement of one's right of property, while in the latter the infringement is the result of an act which is not wrongful in itself, but only in the consequences which may flow from it. In the one case the injury is immediate; in the other it is consequential, and generally results from the commission of an act beyond the limits of the property affected. And the injury must be such as is not susceptible of adequate pecuniary compensation in damages, or one the continuance of which would cause a constantly recurring grievance. 1 High, Inj. (4th ed.) §739. There must be such an injury as from its nature is not susceptible of being adequately compensated at law, or such as from its continuance or permanent mischief must occasion a constantly recurring grievance, which can not be otherwise prevented but by injunction. 2 Story's Eq. Jur. §925: 3 Pom. Eq. Jur. §1350; Wood's L. Nuis. §769. By irreparable injury is not meant, however, such injury as is beyond the possibility of repair or beyond possible compensation in damages, nor necessarily great injury or great damages; but the species of injury, whether great or small, that ought not to be submitted to on the one hand or inflicted on the other, and which, because it is so large on the one hand or so small on the other, is of such constant and frequent recurrence that no fair or reasonable redress can be had therefor in a court of law. Wood's L. Nuis. §770. By continuing nuisance or constantly recurring grievance or permanent injury is not meant a constant and unceasing nuisance or injury, but a nuisance which occurs so often, and is so necessarily an incident of the use of property complained of, that it can be fairly said to be continuous, although not constant or unceasing. Ib. §772; *Farley* v. *Gate City Gas-Light Co.,* 105 *Ga.* 323, 337, 338 (31 S. E. 193); 29 Cyc. 1222, et seq. "An essential fact to be averred and proved when an abatement of a nuisance is sought is that the annoyance and loss complained of will be continuous or recurrent, for the occurrences of nuisances, if temporary and occasional only, are not grounds for interference by injunction except in ex-

treme cases.    29 Cyc. 1225.    Equity will grant relief where
the right is clear and the injury certain and an injunction is
necessary to prevent a multiplicity of suits or to suppress inter-
minable and oppressive litigation; but a court of equity will not
interfere to give relief against an alleged nuisance where the com-
plaining party has an adequate remedy at law, as where redress
can be obtained by an action for damages.   The only injury al-
leged in the petition in the present case is, that the culvert as
constructed, and as maintained by defendant, causes the overflow
of plaintiff's premises, thereby damaging plaintiff's property.
The alleged diversion of the stream was made when the culvert
was originally constructed, and the alleged obstructions in the
street and the diversion of the stream are shown to be merely in-
cidentally injurious, as connected with the alleged defective cul-
vert.   It appears from the petition that the culvert was con-
structed by the lessor of the defendant, some ten years or more
prior to the institution of the action, and it does not appear that
the defendant had made any change therein during the term
of its lease.   The petition complains of only two instances when
the culvert caused the overflow of plaintiff's premises, one in May,
1903, and the other in January, 1906, and, so far as appears from
the petition, these are the only instances of overflows caused by
the culvert.   Specific injuries and stated amounts of damages
to various kinds of property belonging to the plaintiff are fully
set forth in the petition in reference to each of the alleged over-
flows, by which the damages, apparently accurately set forth,
are averred to have been sustained.   There is no suggestion that
the defendant is insolvent.   It is, therefore, apparent from the
petition that the alleged injury to the plaintiff's property caused
by the culvert in question is not of such a nature as not to be sus-
ceptible of being adequately compensated at law, or such as from
its continuous or permanent mischief must occasion a constantly
recurring grievance, which can not be otherwise prevented than
by an injunction.   Nor does it appear, in view of the infrequency
of the overflows caused by the culvert, that the intervention of
equity is necessary to prevent a multiplicity of suits.   The court
erred in not sustaining the demurrer to the petition in so far as it
sought relief by injunction.

2.   In order that notice to an agent may operate as notice to his principal, the subject-matter of the notice must be connected with the agency.   Civil Code, §3027.   As it does not appear from the petition that Pruitt's agency was in any way connected with the culvert in question, the alleged conversations of plaintiff's agents with him and the notice given him by them of the alleged nuisance caused by the culvert, as set out in the petition, should have been stricken on demurrer.

3.   The alienee of the property causing a nuisance is responsible for a continuance of the same, provided he is requested to abate it before action is brought for its maintenance.   Civil Code, §3862.   Notice to such alienee that he will be held responsible for any damages subsequently caused by the nuisance will suffice in lieu of a specific request to abate.   *Central Railroad* v. *English,* 73 *Ga.* 366.

4.   Complaint is made in the motion for a new trial that the court erred in permitting witnesses for plaintiff to testify, over defendant's objection, that Pruitt told them that Hall, defendant's superintendent, had written to him that he, Hall, had received a letter written to him by the president of the plaintiff company in reference to the alleged nuisance.   In the absence of any evidence tending to show that the duty of looking after the culvert and keeping it in repair came within the scope of Pruitt's agency, this testimony was inadmissible as hearsay.

5.   It is in the trial of equity causes only that the judge may instruct and require the jury to find a special verdict of facts only in the cause, and thereupon render a decree in accordance with the law applicable to the same.   Civil Code, §4849.   Therefore, in view of our decision that the petition set forth no cause for the equitable relief sought, the court erred in submitting the questions of fact to the jury and in instructing them to find a special verdict of the facts only, by answering such questions.   With the equity feature eliminated, the case was one only for damages, and a general verdict was necessary, and hence it was error to enter any decree whatever upon the special verdict rendered by the jury.

*Judgment reversed.   All the Justices concur.*