### 27331. GROOVER *v.* HIGHTOWER.

DECIDED FEBRUARY 21, 1939.

*D. S. Strickland, Astor Merritt,* for plaintiff in error.

*R. H. Hutcheson,* contra.

SUTTON, J. On February 28, 1936, J. J. Hightower filed a petition against J. F. Groover, alleging in substance that he was the owner of a described tract of land in Douglas County, ten acres thereof being bottom land through which a branch flowed and emptied into Beaver Run Creek; that within two years prior to the filing of the suit the defendant had constructed a dam across Beaver Run Creek, below plaintiff's land, causing the water to back up the creek to a point within about 600 feet of where the branch emptied into the creek, and that during the crop season immediately preceding the filing of this suit the dam had caused the water to back up the creek and in turn had raised the water under ground in plaintiff's bottoms, causing him to fail to make and gather his crop of corn and other valuable crops of the value of $250; that the backwater from the dam caused the branch through his land to flow at a reduced rate, and caused sand, trash, and other matter to accumulate in the creek and branch, thereby filling the branch with sand and other matter and causing it to overflow the plaintiff's land during heavy rains; that a short time before the filing of the suit the dam had washed away, and the branch run was washing out, and plaintiff's bottom land could be used for

crops in 1936, unless the dam was rebuilt; that, before the construction of the dam, said bottom land was fertile and produced excellent crops, but during 1935 and before the dam washed away, after heavy rains, water stood on and washed his land, thereby damaging the same $500, on account of said dam. There were other allegations seeking injunctive relief to prevent the rebuilding of the dam etc., but this feature of the case has been eliminated. Defendant answered, denying the allegations of plaintiff's petition as to damage alleged to have been caused by the dam across the creek which had been washed away when the suit was filed. The defendant alleged that it was 1000 feet from the place where the branch, which flowed through the plaintiff's land, emptied into the creek to the point where the water was backed up the creek by the dam, and that there was a fall of one foot to each 100 feet between these points, and that the construction of the dam did not in any way damage the plaintiff's land or the productivity thereof.

The plaintiff introduced evidence to the effect that, prior to the construction of the dam across Beaver Run Creek in 1935, his bottom land was fertile and produced good crops; that he made an average of 30 loads of corn, 12 bushels to the load, on this land each year before the dam was built; that after the dam was erected the creek and branch began to fill up with sand, and the water ran back in his ditches, causing his land to overflow and to become so wet and soggy that he could not make any crop on his bottom land in 1935; that he planted it in 1936, but made nothing; that after the dam was washed away in 1936 the sand began to wash out of the creek. He also testified that, in the fall of 1935 and spring of 1936, corn was worth about 75 cents per bushel. ·

· The evidence for the defendant tended to show that the land at the bridge or head of the lake was low, swampy, and marsh land, covered with willows and briars before the dam was erected, and that he had this land cleaned of its rubbish; that the water was not any higher at the bridge, nor was the flow of the stream hindered or retarded any more at this point (this being the place where the plaintiff contended the eddy water from the dam came to), after the construction of the dam than it was prior thereto. The evidence for the defendant showed that in the distance from the mouth of the branch that flowed through the plaintiff's land to the bridge or head of the creek there was a fall of one foot in each

100 feet, making a total fall of 10 feet, which the defendant contended was sufficient fall to wash out and carry off the sand, so as to keep the branch from filling up and injuring the plaintiff's land.

The jury returned a verdict in favor of the plaintiff for $100. The defendant made a motion for new trial which was overruled and he excepted.

■ It is argued by counsel for the plaintiff in error in their brief that the court erred in submitting to the jury the question of damages for loss of crops for the year 1936, along with the issue as to damages for the year 1935, as the suit was filed in February, 1936, before crops for that year were planted. It is true that "Damages for a continuing trespass are limited to those which have occurred before action is commenced" (Code, § 105-1406; *Savannah &c. Canal Co.* v. *Bourquin,* 51 *Ga.* 378 (3)), but no exception to the charge of the court in respect to the above matter appears in the record, and it can not be raised here for the first time. (a) The amount of the verdict of the jury was well within the range of the evidence as to the amount of damage for the loss of crops for the year 1935.

■ The fourth special ground of the motion for new trial complains that the court erred in giving in charge to the jury the definition of a nuisance. "A nuisance is anything that works hurt, inconvenience, or damage to another; and the fact that the act done may otherwise be lawful shall not keep it from being a nuisance. The inconvenience complained of shall not be fanciful, or such as would affect only one of fastidious taste, but it shall be such as would affect an ordinary reasonable man." Code, § 72-101. "It shall be lawful for all corporations and individuals owning or controlling lands upon opposite sides of any non-navigable stream, to construct and maintain a dam or dams across such stream for the development of water power and other purposes, together with canals and appurtenances thereof; Provided, that this section shall not be construed to release individuals or corporations constructing such dam or dams and appurtenant works from liability to private property for damages resulting from the construction and operation thereof, either by overflow or otherwise." Code, § 85-1306. It was contended by the plaintiff that the construction and maintenance of the dam across the creek by the defendant caused the

branch which traversed his property to fill up with sand, thereby rendering his land wet and nonproductive and destroying his crops. This was an invasion of his property rights, for which an action for damages would lie for each year his crops were injured or destroyed. The obstruction of a non-navigable stream so as to impede its course, or cause it to overflow or injure the land of another, is a trespass upon his property. Code, § 105-1407. A nuisance is an indirect tort, while a trespass usually is a direct infringement of one's property rights. "The distinction between trespass and nuisance consists in the former being a direct infringement of one's right of property, while in the latter the infringement is the result of an act which is not wrongful in itself, but only in the consequences which may flow from it. In the one case the injury is immediate; in the other it is consequential, and generally results from the commission of an act beyond the limits of the property affected." *Central of Ga. Ry. Co. v. Americus Con. Co.*, 133 *Ga.* 392, 398 (65 S. E. 855). While under the facts of the present case it was not necessary for the court to give in charge to the jury the definition of a nuisance, still it was not error for him to do so, as in his instructions to the jury he limited the recovery of the plaintiff to damages for his loss of crops caused by injury to plaintiff's land by backwater from the dam in question.

■ Special grounds 5, 6, and 7 of the motion for new trial complain of the charge of the court where he gave to the jury in substance the principles of law embodied in Code, §§ 85-1305 and 105-1407, to the effect that the owner of a stream not navigable is entitled to the same exclusive possession thereof as he has of any other part of his land, and that any one building or obstructing the water course below his land so as to injure or damage him is subject to an action for damages therefor. The charge complained of expressed a correct principle of law, was adjusted to the pleadings and the evidence, and was not error.

■ The following charge of the court was excepted to and assigned as error in that it was not a correct statement of the law applicable to the pleadings and the evidence, and that it was misleading and confusing to the jury: "[a] Gentlemen, water will seek its level, and in doing so the courts will take judicial cognizance of the following facts, just as much as you would take judicial cognizance of the fact that if I drop a book it falls to the floor.

Water will seek its level, and in doing so follows the path of least resistance; and, further, that the placing of an obstruction, such as a dam that creates a lake or pond, would produce a level area of water which, on account of the operation of the law of gravity, would·slow up the water in a stream flowing into the lake or pond; and the same force of gravity would cause sand or silt to settle and be deposited on the bottom of the stream, when so slowed up, where, if allowed to flow at a greater speed, speed meaning volume per unit of time, the sand or silt or other matter would have been swept on down the stream, finally arriving at a point where, when other laws of nature slowed the stream up, the sand or silt or other matter would be deposited. [b] Thus a dam in a stream would affect the speed of water above the end of dead water, and cause the bed of the stream to fill up. As to how far up such stream the bed would fill up would depend on the fall of the stream, the curvature of such stream, and whether or not the stream is clear of obstructions, and other physical facts that would tend to contribute to the slowing up of the flow, allowing, of course, sand and silt to fall to the bottom of the stream instead of going on down the stream. The court and jury will take judicial cognizance of that rule of physics or natural law." The portion of the above charge designated as [b] was error. It was an issue of fact to be determined by the jury as to whether or not the erection and maintenance of the dam by the defendant impeded and retarded the flow of the water through the land of the plaintiff and damaged him as· he contended, it being contended by the defendant and supported by his evidence that, prior to the construction of the dam, the bed of the stream at the bridge, the place to where the ´eddy water extended from the dam, was almost completely filled with sand, and just below the bridge where the lake was later located the land was marshy, swampy, and full of lagoons, and that the creek was filled up and had no fixed run. Without quoting the evidence at length, the defendant testified that after he cleaned up the swamp the water in the creek above the dam and lake ran just as fast after the dam was built as it did before, and that there was no more sand, etc., in the bed of the stream, above the head of the lake, after the erection of the dam than before it was built. He testified: "After I cleaned it out the water flowed much freer. The flow around the bridge, after the lake dam was completed, was

practically the same as it was before I done any work at all. After I had got the dam built and the lake constructed, the flow of the stream around the bridge had not been retarded at all. I had as good flow or better than I did before. The flow around the bridge is about the same as before I bought the property. . . If you put the eddy water of my lake at the bridge, it would not affect the feed of the water above the running water where it would have any fall. The water would get out of the creek above there just as fast as it would before I built the dam. It would have no effect whatever. It would not slow up the creek above the eddy water. My answer is that it would not deposit any sand in the bed above there." The court erred in not submitting this issue to the jury.

*Judgment reversed. Stephens, P. J., and Felton, J., concur.*