BAGWELL vs. BAGWELL.

1. Any fact showing that a contract is unfair, unjust, or against good conscience, will justify a court of equity in refusing to decree its specific performance.

2. The exercise of the jurisdiction of courts of equity to decree a specific performance or the recission of a contract, is not a matter of right in either party, but is a matter of sound and reasonable discretion in the court, which governs itself, as far as it may, by general rules and principles, but at the same time withholds or grants relief according to the circumstances of each particular case, when these rules and principles will not furnish any exact measure of justice between the parties.

3. Courts of equity will not decree a specific performance in cases of fraud or mistake; or where the decree would produce injustice; or where it would còmpel the party to an illegal or immoral act; or where it would be against public policy; or where it would involve a breach of trust.

4. A surviving member of a firm was also the administrator of the deceased partner; the firm and its members were insolvent; the firm and the deceased member were deeply involved; the complainant, as executor, sold land as the individual property of the decedent; it was bid off for defendant, who subsequently transferred his bid to complainant, upon condition that complainant would pay him a note which he held against the insolvent firm; a part of this amount has been paid. Complainant offered to complete the contract, and prayed for specific performance:

Held, that the bill was properly dismissed on demurrer. The contract set up would divert assets from the proper course of administration, and be a breach of trust and a constructive fraud. Partnership assets are primarily liable for firm debts, and individual assets for individual debts, in cases of insolvency and death.

September 11, 1883.

Specific Performance. Partnership. Debtor and Creditor. Equity. Before Judge HUTCHINS. Franklin Superior Court. March Term, 1883.

J. M. C. Bagwell filed his bill against A. G. Bagwell, alleging, in brief, as follows: In 1873, J. Madison Bagwell and complainant were merchants in the town of Carnesville, Georgia, under the firm name of J. M. Bagwell & Son. On April 19, 1873, they borrowed from

defendant $260.00, and gave therefor their note, bearing ten per cent interest. On March 8, 1875, J. Madison Bagwell died testate, leaving complainant as his executor. As such, complainant sold the realty of the deceased, on the first Tuesday in January, 1876. Defendant caused the store-room in Carnesville to be bid in for him for $275.00. Some days after the sale, defendant went to complainant and informed him that he (defendant) had no use for the store-room, and was unable to pay for it at that time, and offered to let complainant take it from him. Complainant tendered him a deed, but defendant declined to take it for awhile, saying that complainant could hold it, but he subsequently took it. A contract was made between complainant and defendant, to the effect that complainant should pay off the firm note due to defendant, assume the bid of defendant for the house, and that the defendant should thereupon make him a deed. This agreement was very advantageous to defendant, because the firm and both of its members were insolvent; and in the regular course of administration, the individual assets of the deceased member would be first applied to his individual debts, leaving the firm debt due to defendant unpaid. On the day the contract was made, complainant paid defendant $173.00, and on July 13, 1878, he paid $25.00 more. Immediately after the contract, complainant took possession of the property, paid taxes and expenses of repairs, and held possession until January 13, 1883. At the time of the contract, property in Carnesville was very much depreciated in value, and complainant would not have remained there at all but for having bought this lot, and would not have rented it at any price. But property has now advanced in valuation, and defendant claims the title to this house, and unless a specific performance is decreed, can eject complainant and hold him liable for rent. He has tendered defendant the balance due on the note, and demanded a deed, but defendant refuses to com-

ply with the contract. The object of the bill was to com-
pel a specific performance.

Defendant demurred to the bill for want of equity,
because there was a complete remedy at law, and because
the contract set up in the bill was illegal and contrary to
public policy.

The court sustained the demurrer and dismissed the
bill. Complainant excepted.

J. T. DORTCH; W. R. LITTLE; S. P. THURMOND, for plain-
tiff in error.

A. S. ERWIN; B. F. CAMP, for defendant.

HALL, Justice.

Any fact showing that a contract is unfair, or unjust, or
against good conscience, will justify a court of equity in
refusing to decree its specific performance. Code, §3190.
The exercise of the jurisdiction of a court of equity to de-
cree a specific performance, or the recission of a contract,
is not a matter oɪ right in either party, but is a matter of
sound and reasonable discretion in the court, which gov-
erns itself, as far as it may, by general rules and principles,
but, at the same time, which withholds or grants relief
according to the circumstances of each particular case,
when these rules and principles will not furnish any ex-
act measure of justice between the parties. Story's Eq.,
§742.

Courts of equity will not decree a specific performance
in cases of fraud or mistake; or where the decree would
produce injustice; or where it would compel the party to
an illegal or immoral act; or where it would be against
public policy; or where it would involve a breach of trust.
*Id.*, 769; Mortback *vs.* Buller, 10 Ves., 292; Ord *vs.* Noel,
5 Madd., 438; Bridges *vs.* Rice, 1 J. and W., 74; and nu-
merous other cases cited by annotator in notes to Woollam
*vs.* Hearn, 2 White and T. Lead. Cases, pt. 1, p. 376, marg.

This rule embraces constructive as well as actual fraud. *Ib.*, American Notes, p. 593, top.

The bill, in this instance, makes this case : The complainant was the surviving member of a firm, and also the administrator of the deceased partner both the firm and the individual members thereof were insolvent; the firm was deeply involved, as was also the deceased member on his personal account; in fact, his estate was wholly inadequate to pay his individual debts. The property in question was sold as the individual property of deceased, by the complainant, as his administrator, and was bid off for the respondent, who subsequently transferred his bid to the complainant, upon condition that the complainant would pay him a note which he held against this insolvent firm. Only a portion of the purchase money, so-called, was paid by complainant, in pursuance of this contract, to the estate he represented; the balance of the same, or a large portion thereof, was paid on the claim held by defendant against this insolvent firm, and was thus diverted from 'the proper course of administration, the partnership assets being primarily liable to partnership debts, and the individual effects to the personal debts of the members. Code, §1918. That a court of equity will not decree a specific performance of such a contract, is too plain to admit of question or doubt; it would be assisting in a direct breach of trust; would be aiding in a violation of the settled policy of the law, and would be countenancing and upholding a constructive fraud. 9 Paige's Ch. R., 650; *Fleming et al. vs. Foran et al.*, 12 *Ga.*, 594, *et seq.*, especially what is said by Lumpkin, J., on pp. 596, 597, 598, 599.

There was, therefore, no error in sustaining the demurrer to this bill; it was without equity, and showed upon its face that the contract it sought to have specifically performed was in violation of public policy, was founded on a breach of trust, and was, to say the least of it, a constructive fraud.

Judgment affirmed.