## SWINT *vs.* CARR.

A deed to secure the payment of a debt, being executed at a time when no usury law was in existence in this state, did not become infected with usury upon the subsequent re-enactment of such a law.

(*a.*) A court of equity will never decree a specific performance of a fraudulent, illegal or hard and unconscionable bargain; and where a contract of compromise was extorted by fears of prosecuting the son of the defendant, and he, being an ignorant and illiterate man, was otherwise overreached and duped into the arrangement made, a refusal to decree a specific performance against him was proper.

(*b.*) The defendant being willing to submit to the performance of the original contract, a decree rendered in accordance with the terms thereof was proper. The amount found which the complainant was to pay, as a condition upon which the premises in dispute were to revert to him was less than was due the defendant; but to this the latter does not object, and his opponent cannot do so.

(*c.*) There is no other material error either in the instructions or several rulings of the court.

April 6, 1886.

Interest and Usury.    Deeds.    Specific Performance.
Before Judge LUMPKIN.    Hancock Superior Court. October Term, 1885.

On March 5, 1883, Swint filed his bill against Carr, alleging that, on May 1, 1875, he had made a deed to the

defendant to secure an indebtedness, and on July 1, there-after, the defendant executed a bond to re-convey title to the plaintiff upon the payment of such indebtedness; that in 1832, the parties had a settlement and agreed upon $182.50 as the amount still due, and a note for that amount, due on December 25 of that year, was given; and that the complainant had tendered the amount of the note, but the defendant refused to receive it or to make him a title. The prayer was for specific performance.

The defendant answered the bill, in brief, as follows: The indebtedness accrued prior to the making of the deed to secure it. The defendant was an illiterate man and took what he believed to be notes for the correct amount of the indebtedness to him. In 1882, the complainant repre-sented to the defendant that the original notes were barred by the statute of limitations, and the complainant threat-ened to prosecute a son of the defendant for taking part in removing and storing brandy illegally, and by these means induced the defendant to accept the new note and deliver up the old ones. As soon as he discovered his rights, he offered to return the new note and demanded that the old ones be re-delivered to him, but the complain-ant stated that he had burned them.

On the trial, the complainant testified, in brief, as follows: He had long been indebted to the defendant, having bor-rowed various sums from him at different times from 1869 to 1874, on which he was to pay interest at the rate of 20 or 25 per cent. per annum. In 1884, he borrowed from the defendant $200 and gave two notes for $280 and $284 re-spectively for his indebtedness. Interest was charged in the notes at 15 per cent. He made various payments on this note until June, 1882. The parties then met, and it being considered that the old notes were barred by the statute of limitations, the complainant was willing and offered to pay the real amount which he owed the defend-ant; and after calculating interest on the original indebt-edness at eight per cent. and allowing all credits, he made

the new note for $182.50, which the defendant accepted in compromise, and the old notes were burned by the complainant. The defendant was given his choice to risk his claim on the old notes or to take the new one, and he acted freely and voluntarily in the matter. The complainant had previously threatened to prosecute the son of the defendant in the U. S. court for taking part in the illegal removal and storage of brandy before it was gauged. He thought the son was an accessory, but made no threats against the principals. This was mentioned on the day of the compromise, and it entered into the consideration; it moved the complainant to make the demand for the reduction of the debt. The threat was reiterated that day, but never was mentioned after the settlement. He had offered to pay the compromise note, but this was refused.

There was no testimony for the defendant, but the papers referred to above were put in evidence.

The jury found for the defendant $424, principal, with interest from January 3, 1882, and that the defendant make the complainant a deed. The plaintiff moved for a new trial on numerous grounds. One ruling excepted to was that the court charged as follows: " Ascertain from the testimony what amount Swint owed Carr before any settlement was made, if there was a settlement. Allow no deduction from that on account of an agreement to suppress or abandon a prosecution, if there was such an agreement. If plaintiff claims payment of the original notes given in March, 1874, he must show it; and if the jury believes from the evidence that the abandonment of a criminal prosecution entered into the settlement as a part of the consideration, it is void as to such consideration. And if there was any other legal consideration therefor, the burden rests on him relying on such settlement to show the amount of such legal consideration."

Error was assigned also upon the ground that the court failed to charge that a title made as part of a usurious contract or to evade the laws against usury was

void; but the presiding judge certifies that no request to charge to that effect was made, and no such point was raised before him in argument. The court overruled the motion, and the complainant excepted.

J. T. JORDAN, for plaintiff in error.

JAS. A. HARLEY; R H. LEWIS, by brief, for defendant.

HALL, Justice.

In order to dispose of this case finally and effectually, it will be necessary to consider only a single question made by the proofs and pleadings, viz., that the contract which the bill sought to have performed was the result of an illegal, fraudulent and unconscionable agreement, by which a larger debt due from complainant to defendant, and for the security of which the defendant held a defeasible deed from complainant to the premises in question, was reduced. There is no doubt as to the validity of the debt which complainant held against the defendant. There is no pretense that it was infected with usury, for at its creation there were no usury laws in existence in this state; and we are unable to understand how a deed given to secure the payment of this debt, after the restoration of the usury laws, can be said to have been infected with usury. It is quite immaterial, too, whether the doubt suggested by the complainant to the defendant of his inability to enforce the collection of the notes given for this debt, by reason of the bar of the statute of limitations attaching in his favor, was a part of the inducement that led to the compromise, since it was not the only, or indeed the principal, inducement, but was coupled at the same time with a threat to prosecute defendant's son in the United States court for removing and storing distilled spirits that had not been gauged by the proper officers, unless this reduction of the debt was made. It is manifest that the compromise was extorted from defendant's fears, and that, being an

ignorant and illiterate man, he was otherwise overreached and duped into this arrangement by the complainant, all of which fully appears from the record, and especially from the clear and able judgment pronounced by the presiding judge in overruling the motion for a new trial. Nothing is better settled than that a court of equity will never decree the specific performance of a fraudulent, illegal or "hard and unconscionable" bargain. 1 Story's Eq. Jur., §§769, 750(a) and citations in notes. , The defendant was willing to submit to the performance of the original contracts, and a decree rendered in accordance with the terms thereof was proper. The amount found, which the complainant was to pay as a condition upon which the premises were to revert to him, was actually less than was due the defendant; but to this he does not, and his opponent cannot, object. There is no other material error either in the instructions or several rulings of the court.

Judgment affirmed.