## THE GEORGIA RAILROAD AND BANKING COMPANY *vs*. BERRY.

1. The yearly value of land being in question, the crop which it would produce, if free from the alleged nuisance, is a relevant fact when coupled with the cost of production. Yearly value is not measured alone by value for rent, but may be measured as well by value for cultivation.
2. That an attempt was made to raise a crop on the damaged land, and that the crop was drowned out by the nuisance, is admissible as tending to show that the yearly value of the land was affected by the nuisance, the declaration alleging that water was caused to back over and stand upon the land.
3. That the plaintiff contributes to his damage by making it more than it would otherwise be, will not prevent a recovery for so much as it is without such increase by his own act.
4. Where there is no evidence of any grant of the right of way or the assessment of compensation therefor, it is not error to decline to charge the jury touching these matters.

April 19, 1887.

Evidence. Crops. Nuisance. Damages. Negligence.

Railroads. Charge of Court. Before Judge LAWSON. Jones Superior Court. October Term, 1886.

To the report contained in the decision, it is necessary to add only the following, which were among the grounds of the motion for a new trial:

(1) Because the court admitted testimony to the effect that the land alleged to have been damaged should have made thirty to forty bushels of corn per acre, worth 75 to 80 cents per bushel, at a cost of $10 to $15 per acre; but that only thirty to forty bushels were produced by the whole tract by reason of its being drowned out. The objection was that the suit was for depriving the plaintiff of the rental value of the land, and not for damage to the crop.

(2) Because the court refused to charge as follows: "Plaintiff sues alone for deprivation of the use of his land by the tortious act of defendant; he does not sue for damage to his crops. Hence, if you find for the plaintiff, the measure of his damage is not the injury to his crops, but the value of the land for rent per year for the years 1882 and 1883 of so much as was damaged by defendant."

(3) Because the court refused to charge that the assessment of compensation for land taken for a railway covers all damages, whether foreseen or not, which result from a proper construction of the road-bed.

(4) Because the court refused to charge as follows: "If a railway, under a grant of right of way, constructs its road-bed with prudence and care, it will not be liable to adjacent land-owners for injuries incident to such construction."

(5) Because the court refused to charge that if the plaintiff, by his own negligence, contributed to cause the damage to this land, he could not recover.

(6) Because the verdict was contrary to law and the evidence.

Jos. B. CUMMING; HARDEMAN & DAVIS, for plaintiff in error.

R. L. BERNER; RICHARD JOHNSON, by HARRISON & PEE-
PLES, for defendant.

BLECKLEY, Chief Justice.

Prior to 1882, the Georgia Railroad and Banking Com-
pany constructed a culvert over a small stream, the effect
of which, it was alleged, was to obstruct the free passage
of water that formerly flowed through the channel of the
stream. Berry rented for two years from a third person
some bottom land that lay just above this culvert. He
cultivated the land, or attempted it, both years (1882 and
1883). A few acres lying near the culvert proved to be
of no productive value. His crops were drowned out by
back-water from the culvert, as he contends. He brought
his action against the railroad company for these damages,
alleging that the land was of the yearly value of $15 per
acre, over and above the expense of cultivation, for which
purpose it was used at the time. He alleged that this
culvert interfered with and stopped the free flow of the
water, thereby causing the same to back up and stand on
the land, saturating the soil with water, so that the land
became of no practical use or benefit to the plaintiff.

The case was tried, and much evidence introduced,
some of it going to show that a few acres of this bottom
was seriously damaged by the obstruction; and much of
it, on the contrary, going to show that there was no damage
of any consequence from that source, but that a part at
least of the trouble resulted from the failure of the plain-
tiff to keep a ditch in the bottom cleaned out. Some of
the evidence tended to establish the fact that there was a
marsh there all the time, and that the attempt was made
by the plaintiff to cultivate this marsh, which had never
been previously cultivated. The effect of the whole upon
the mind of the reader is, that there was conflict through-
out. Some of the evidence seems to indicate that the
difficulty was caused by the back-water from Fishing
creek, a creek into which this stream flowed a few yards

below the embankment. Some of the witnesses thought there was no back-water from Fishing creek, but that the back-water was caused altogether by the embankment and the culvert. It was properly and pre-eminently a question for the jury as to what really caused the damage and the extent of it. We find ourselves unable to settle it any better than they did, if as well. The plaintiff recovered, upon the second trial, a verdict for $60. A motion was made for a new trial, and it was overruled. The complaint was partly of the admission of evidence and partly of the refusal to charge the jury as requested.

1. The declaration does not allege simply that the property was of the yearly value of $15 per acre, but that it was of the yearly value of $15 per acre for cultivation. The plaintiff had rented the land and wanted it for use. It would hardly do to say he could recover no more than its value for rent. The presumption is that he paid that much, and his real interest in it was the difference between the value for rent and the production, deducting the cost of production; that would be the measure of his beneficial interest in it; and it seems that capacity for production and expense of production would tend to illustrate its yearly value to him, and we can see no reason for restricting him to what he could have gotten by renting it out. He did not want to rent it out; he wanted to cultivate it, and was entitled to do it; and if its productiveness was impaired by this wrongful obstacle to the free flow of the water, it seems that he was entitled to recover accordingly. The yearly value of land being in question, the crop which it would produce, if free from the alleged nuisance, is a relevant fact when coupled with the cost of production. Yearly value is not measured alone by value for rent, but may be measured as well by value for cultivation.

2. That an attempt was made to raise a crop on the damaged land, and that the crop was drowned out by the nuisance, is admissible as tending to show that the yearly value of the land was affected by the nuisance, the declar-

ation alleging that water was caused to back over and stand upon the land.

3. The court was requested to charge the jury, that if the plaintiff contributed to the damage, he could not recover. If he had a ditch filled up that he ought to have kept open, or let it fill up, and thus made his damage more, it would not prevent him from recovering so much damage as he sustained from the culvert, without reference to the ditch; and there is evidence going to show that the culvert damaged the land independently of the ditch. If it did, to the extent of that damage the plaintiff would be entitled to recover, notwithstanding he may have caused more damage by his own act. The request to charge, adapting it to the evidence in the case, should have been that he could not recover for any damage that resulted from his own act, but could recover for any damage that resulted from the defendant's act independently of his own. The charge refused, we think, was properly refused, for the reason I have indicated. That the plaintiff contributes to his damage by making it more than it would otherwise be, will not prevent a recovery for so much as it is without such increase by his own act.

4. There were two more requests to charge: one to the effect that where a railroad had a grant of a right of way, and constructed its road properly, it would not be liable for any damage resulting from construction; the other to the effect that the assessment of damages, in compensating for the right of way, would be presumed to include all future damage, known or unknown, provided the work was done properly. There was no evidence that there had been any grant of the right of way, or that any damages therefor had ever been assessed; so if these propositions are right in themselves, they rest on something outside of the evidence; and therefore we need not consider them further. Where there is no evidence of any grant of the right of way or the assessment of compensation therefor, it is not error to decline to charge the jury touching these matters.

The best we can do with the case, while it is not quite satisfactory, is to affirm the judgment.

Judgment affirmed.