## HOLMAN *v.* ATHENS EMPIRE LAUNDRY COMPANY.

1. If a public nuisance causes special damage to a private citizen, he has a right of action therefor. If a private nuisance causes injury to the person or property, or both, of another, a cause of action accrues.

2. "A nuisance is anything that worketh hurt, inconvenience, or damage to another; and the fact that the act done may otherwise be lawful does not keep it from being a nuisance."

3. Every person has the right to have the air diffused over his premises, whether located in the city or country, in its natural state and free from artificial impurities.

(*a*) By air in its natural state and free from artificial impurities is meant pure air consistent with the locality and character of the community.

(*b*) The pollution of the air, so far as reasonably necessary to the enjoyment of life and indispensable to the progress of society, is not actionable.

(*c*) The privilege of use incident to the right of property must not be exercised in an unreasonable manner, so as to inflict injury upon another unnecessarily.

(*d*) The maxim, sic utere tuo ut alienum non lædas, considered and applied.

4. Smoke is not per se a nuisance.

(*a*) To constitute smoke a nuisance, it must be such as to produce either actual, tangible, and substantial injury to neighboring property itself, or such as to interfere sensibly with its use and enjoyment by persons of ordinary sensibilities.

5. The jurisdiction of equity to restrain nuisances is in aid of the legal right when the legal right is inadequate, and to prevent a multiplicity of suits. In cases of nuisances the foundation for the interference of equity rests in the necessity of preventing irreparable injury and multiplicity of suits.

(*a*) There is in principle no distinction between any of the cases, whether it be smoke, smell, noise, or gas.

(*b*) The doctrines of "de minibus," "balance of injury" or "public interest," and "discretion" considered.

(*c*) In a suit to enjoin the continuance of a nuisance created by smoke alone, the plaintiff can not be denied injunctive relief, his case being otherwise made out, because it would injure the defendant or the public to grant it. In such a case the chancellor has no discretion at the final trial.

(*d*) The injuries may be balanced and the discretion of the chancellor exercised in the grant or refusal of an interlocutory injunction.

6. Under the pleadings and evidence, the court erred in directing the jury to return a verdict for the defendant.

No. 1058.    SEPTEMBER 4, 1919.

Equitable petition. Before Judge Cobb. Clarke superior court. June 22, 1918.

W. S. Holman is the owner of a nine-story brick building located on the corner of Clayton and Lumpkin streets in the City of Athens, known as the Holman building. The building was completed in January, 1914. The exterior construction of the building is of tapestry brick. The ground floor of the building is occupied by a café and lunch room, ice-cream and candy factory, cigar factory, and a gas company. The other floors are designed for office purposes. Immediately across Lumpkin street from the Holman building and on the corner of Clayton and Lumpkin streets is the two-story brick building of the Athens Empire Laundry Company. This building has been occupied by a steam laundry for about eighteen years. In the building is a thirty-five horse-power steam boiler used in the operation of the laundry. The smoke-stack on the west side of the laundry is about 140 feet away from the Holman building. The top of the stack, which is about sixty feet in height, is on a level with the sixth floor of the Holman building. In July, 1917, W. S. Holman filed an equitable petition in the superior court of Clarke county, in which he alleged that until recently the laundry company had used coke for the purpose of firing its boiler; that coke did not give off any considerable quantity of smoke, and could be used for fuel without financial loss or inconvenience to the laundry company, and is obtainable in the necessary quantities in the local market. He also alleged that the laundry company, at the time of the filing of the suit, was using soft coal for fuel and emitting "a very black, dense smoke, which smoke is a nuisance to the portion of the city affected (the business section), but is especially injurious to petitioner." He charged that the smoke entered the windows of the building and blackened the walls and casing of the building itself, to the special injury of the building, as well as to the inconvenience and discomfort of the occupants thereof. His tenants were compelled to keep the windows down on the west and north fronts of his building, during the hot weather of the summer, in order "to exclude the immense volumes of smoke blowing therein," from the stack of the laundry building. A number of the plaintiff's tenants, and especially the tenant operating a millinery and hairdressing establishment, had complained and threatened to leave his building unless the smoke nuisance was abated. The defendant would continue to use soft coal, and the damage from the nuisance created thereby would be irreparable; a multiplicity of

suits would result; and the intervention of a court of equity was necessary to the adequate protection of the plaintiff's rights.. The prayers of the petition were, for judgment for the damage sustained by the plaintiff up to the filing of the suit; for injunction restraining the defendant from operating its plant "with such coal as throws out a black, dense smoke;" for general relief, and for process.

The laundry company answered, and admitted the location of the respective buildings and of its smoke-stack substantially as set out in the petition. It also admitted that at the time of the filing of the suit it was using soft coal, and that it had in the past, and for some years, used coke as a fuel; but it averred that coke could be obtained in the Athens market only from a tenant (a gas company) of the plaintiff; that recently it had been unable to obtain coke except at prohibitive prices; that no more smoke was emitted from its boiler than was absolutely necessary in the proper operation of its plant; that its plant was operated by a skilled fireman and engineer and in a proper manner; and that its use of soft coal did not work appreciable hurt or damage to the plaintiff. It denied substantial injury and damage to the plaintiff's building; denied substantial injury to the plaintiff's tenants; denied that the injury, if any, to the plaintiff's building, the plaintiff's tenants, and their property was irreparable in damages, but on the contrary averred that the plaintiff had an adequate and complete remedy at law.

On the trial the plaintiff, by amendment, waived "his right to damages up to the time his suit was filed." The evidence on behalf of the plaintiff tended to show injury to the building as alleged in the petition, extreme inconvenience and discomfort to the plaintiff's tenants, and complaints and threats by the tenants to vacate the building. Whenever the wind was blowing from the laundry in the direction of the plaintiff's building, dense volumes of black smoke from the laundry's stack were blown directly into the building. Prior to the summer of 1917, at which time the defendant abandoned the use of coke as a fuel and commenced to use soft coal, some smoke came from the laundry's stack into the plaintiff's building. This smoke was, however, of a "yellowish color," was not particularly offensive to the plaintiff's tenants, and did not substantially damage the walls of the building. Since the defendant commenced to use soft-coal as a fuel the dense smoke from the defend-

ant's stack was blown directly against the plaintiff's building, whenever the wind was from the direction of the laundry, in such quantity as to necessitate the closing of the windows on both the west and north sides of the plaintiff's building. During the hot weather of the summer it was necessary to keep the windows of the building open. The tenants complained, not only on the ground of inconvenience and discomfort, but on the ground that the soot carried into the building and deposited upon the books, papers, furniture, and merchandise discolored and permanently injured the same. Even in winter the dense volume of smoke from the defendant's stack was blown in around the windows and openings of the building. Some of the plaintiff's tenants demanded offices on the opposite side of the building and away from the laundry. The plaintiff was compelled to make these changes in order to hold his tenants, to his financial loss. Coke, of suitable quality and in sufficient quantities, and at reasonable prices, could be had and used by the defendant. There was also some evidence to the effect that the volume of smoke thrown off by soft coal could be gradually reduced and controlled by the use of modern appliances. The defendant's evidence was to the effect that its laundry and the plaintiff's building were located in the business section of the city; that its laundry had been in operation several years before the plaintiff erected his building in close proximity thereto; that it had used coke as fuel as long as it could reasonably obtain it in necessary quantities and quality; that in the summer of 1917 coke could only be obtained in Athens from a tenant of the plaintiff, and then at prohibitive prices. Its evidence also tended to show that the plaintiff's building, by reason of its height, caused downward eddies in the air currents; that smoke, sand, trash, and other particles were blown against the building and carried down in the air currents and thrown into the Holman building and into the neighboring buildings, including the laundry building, to the inconvenience and injury of the defendant; that several other smoke-stacks in the immediate locality emitted large volumes of black smoke, and that the smoke from these stacks was also blown against and into the plaintiff's building and carried down into the defendant's building. The witnesses for the defendant gave evidence that the boiler was fired by competent and careful persons, and that every reasonable and practicable effort had been made and every practicable appliance had been used to reduce

and control the smoke. It also appeared that soft coal was used as a fuel in the furnace of the Holman building, and that dense black smoke was emitted from the plaintiff's stack, and that whenever the atmosphere was damp and humid the smoke was inclined to settle into the defendant's laundry. It further appeared that there was no State statute or city ordinance regulating the emission of smoke in the City of Athens. At the conclusion of the evidence, briefly outlined above, and after argument of counsel, the court instructed the jury at some length, finally directing a verdict for the defendant. The plaintiff filed a motion for a new trial, and to the judgment overruling the motion he excepted.

*John J. & Roy M. Strickland* and *Wolver M. Smith,* for plaintiff.
*Erwin, Rucker & Nix,* for defendant.

GEORGE, J. (After stating the foregoing facts.)

1. As a general rule a public nuisance gives no right of action to any individual, but must be abated by process instituted in the name of the State. Civil Code, § 4454. If a public nuisance causes special damage to a private citizen, he has a right of action therefor. Civil Code, § 4485; *Trust Company of Georgia* v. *Ray,* 125 *Ga.* 485, 487 (54 S. E. 145); *Savannah, Florida & Western Railway Co.* v. *Gill,* 118 *Ga.* 737 (45 S. E. 623); *Richmond Cotton Oil Co.* v. *Castellaw,* 134 *Ga.* 472 (67 S. E. 1126). The fact that the plaintiff waived his claim to damages alleged to have been suffered prior to the filing of the suit is of no special consequence. *Tate* v. *Mull,* 147 *Ga.* 195, 197 (93 S. E. 212). If the alleged nuisance be regarded as a public one, the evidence in the case is sufficient to authorize the jury to find special injury and damage to the plaintiff, and, therefore, he may maintain the action. If the alleged nuisance be considered a private one, there can be no question of the plaintiff's right to sue under section 4456 of the Code, which declares: "A private nuisance may injure either person or property, or both, and in either case a right of action accrues."

In *Bonner* v. *Wellborn,* 7 *Ga.* 296, 311 (before the code), Judge Nisbet, speaking for the court, said: "A private nuisance is anything done to the hurt or annoyance of the lands, tenements, or hereditaments of another. 3 Blackstone, 170. . . If one does any other act, in itself lawful, which yet being done in that place, necessarily tends to the damage of another's property, it is also a nuisance." In *Coker* v. *Birge,* 9 *Ga.* 425, 427, 54 Am. D. 347

(before the code), Judge Warner said: "Blackstone defines a nuisance to be anything that worketh hurt, inconvenience, or damage. 3 Bl. Com. 215." Section 4557 of the Civil Code declares: "A nuisance is anything that worketh hurt, inconvenience, or damage to another; and the fact that the act done may otherwise be lawful does not keep it from being a nuisance. The inconvenience complained of must not be fanciful or such as would affect only one of fastidious taste, but it must be such as would affect an ordinary reasonable man."

3, 4. Theoretically, every person has the natural right to have the air diffused over his premises in its natural state, free from all artificial impurities. Wood on Law of Nuisances (3d ed.), § 495. If this rule were literally applied, its application would seriously disturb business, commerce, and society itself. Hence, by air in its natural state and free from artificial impurities is meant pure air consistent with the locality and nature of the community. Wood on Law of Nuisances (3d ed.), § 496, and cases cited; Joyce on Law of Nuisances, § 136, and cases cited. The use of fuel in the home, the place of business, and the manufacturing establishment is necessary. In proportion as the population thickens, the impurities thrown into the air are increased. · The pollution of the air, actually necessary to the reasonable enjoyment of life and indispensable to the progress of society, is not actionable; but the right (and such it must be conceded) must not be exercised in an unreasonable manner so as to inflict injury upon another unnecessarily. Embrey *v.* Owen, 4 Eng. Law & Eq. 476, 477. Every one has the right to use his property as he sees fit, provided that in so doing he does not invade the rights of others unreasonably, judged by the ordinary standards of life and according to the notions of reasonable men. The right to use one's property as he pleases implies a like right in every other person; and it is qualified by the doctrine that the use in the first instance must be a reasonable one. The maxim is sic utere tuo ut alienum non lædas. See the elaborate judgment of Blackburn, J., in Fletcher *v.* Rylands, 35 L. J. Exch. 154, L. R. 1 Exch. 265, 3 H. L. 330. Whether the property be a dwelling-house or manufacturing enterprise is immaterial. Smoke is not per se a nuisance. City of St. Paul *v.* Gilfilland, 36 Minn. 298 (31 N. W. 49). In Crump *v.* Lambert, L. R. 3 Eq. 409, 412, Lord Romilly, M. R., said: "With respect to the question of law,

I consider it to be established by numerous decisions that smoke, unaccompanied with noise or noxious vapour, that noise alone, that offensive vapours alone, although not injurious to health, may severally constitute a nuisance to the owner of adjoining or neighbouring property." To constitute smoke a nuisance, according to the authorities, it must be such as to produce a visible, tangible, and appreciable injury to property, or such as to render it specially uncomfortable or inconvenient, or to materially interfere with the ordinary comfort of human existence. Joyce on Law of Nuisances, § 137; Campbell v. Seaman, 63 N. Y. 568 (20 Am. R. 567). With respect to dwelling-houses, the rule is stated in Wood on Nuisances (3d ed.), § 505, as follows: "The rule is that the comfortable enjoyment of the premises must be *sensibly* diminished, either by actual, tangible injury to the property itself, or by the promotion of such *physical* discomfort, as detracts *sensibly* from the ordinary enjoyment of life." See also Ross v. Butler, 19 N. J. Eq. 294 (97 Am. D. 654); Duncan v. Hayes, 22 N. J. Eq. 26. That the business itself is offensive to others, or that property in the neighborhood of such business is necessarily adversely affected thereby, or that persons of fastidious taste would prefer its removal, is not sufficient. Applying the foregoing principles to the case in hand, the defendant may make any use of its property, and carry on any business not per se a nuisance, that produces no unnecessary, unreasonable, unusual, or extraordinary impregnation of the air with smoke or soot, to the sensible inconvenience and discomfort of plaintiff's tenants, or to the actual, tangible, and substantial injury of plaintiff's realty.

5. Whether a nuisance in fact existed, in the circumstances of this case, was at least a question of fact for the jury. See *Hill* v. *McBurney Oil &c. Co.,* 112 *Ga.* 788(3), 792 (38 S. E. 42, 52 L. R. A. 398), where an injunction was granted on account of noise alone. We do not understand that the trial judge acted upon a contrary view in directing a verdict for the defendant. In the course of his remarks to the jury he said: "If smoke creates a nuisance, and it can, then the party that creates the nuisance must compensate in money any one that is damaged by the creation or maintenance of the nuisance." While the trial judge doubtless had in mind the extent of the plaintiff's injury, he nevertheless finally concluded that a court of equity should not undertake to regulate smoke in the busi-

ness districts of populous communities, or cities. The judge expressly followed the rule announced in the case of Union Planters' Bank &c. Co. *v.* Memphis Hotel Co., 124 Tenn. 649, 139 S. W. 715, 39 L. R. A. (N. S.) 580. The Tennessee Supreme Court in that case held: "Injunction will not lie to prevent a property owner, in a densely populated portion of the city, from causing smoke to issue from the chimneys of his building at an elevation lower than the roofs of neighboring buildings, although permitting it to issue at a lower level constitutes a nuisance to the occupants of such buildings." In the course of the opinion by Green, J., it was said: "There can be no doubt, upon the proof before us, that complainant has sustained injury by reason of the operation of the plant of the defendant." He then dealt with the feasibility of requiring the defendants to extend their smoke-stack, and concluded that this could not be practically accomplished; that the further extension of the stack "would be a greater menace to a greater number of people." He then added: "We prefer, however, to put our decision on a broader ground than the particular facts of this case, which we have stated. The annoyance and damage which complainant sustains from this smoke-stack is no doubt serious, but, in undertaking to find a remedy, we must consider the effects and results of that remedy. The situation existing between complainant's property and the defendant's property is by no means uncommon in any city. Such conditions are the rule rather than the exception. The buildings in none of our cities are of uniform height. All buildings in this day, which house any establishments of any considerable importance, are equipped with boilers, use coal, and make smoke. This smoke has to escape, and there must be smoke-stacks; and wherever one building is higher than another, it will suffer from the smoke issuing from the stacks of the lower, unless some means could be devised whereby all stacks could be made a uniform height; and even this would not obviate the trouble, because of the tendency of smoke to descend in damp weather, and because of downward eddies in the air currents, which exist in the neighborhood of all high buildings. . . If the chancellor's decree were followed, it would commit the courts of this State to a policy that would prove embarrassing in the extreme. Any owner of a higher building could compel the adjacent owner of a lower building to run a smoke-stack up to a point on a level with the first

owner's roof. The height of the extension demanded in this case is 50 feet, and we doubt if that could be safely accomplished. Suppose that, instead of being a fifteen-story building, the Tennessee Trust building was thirty stories high. Upon the same principle, it could compel the extension of this Peabody stack up to the level of a thirty-story roof. Furthermore, both of these buildings are located in the heart of the City of Memphis, as has been stated. A fifteen-story building is hardly the limit of the architectural development of this section of the city. There will in time doubtless be buildings erected in this immediate neighborhood much higher than the Tennessee Trust building or the Peabody Hotel. Upon the principle of the chancellor's decree, if it were adopted, when these new buildings were erected, they could compel the defendants to again extend their smoke-stack into the air, and could compel the Tennessee Trust Building to extend its smoke-stack, and so this process might be repeated indefinitely." In the course of the opinion the court observed (and we think the observation an important one) that "It is not even urged that they [the defendants] should be required to use any fuel different from the kind which they now use. Complainant could make no such insistence as this, for the proof shows that in its own plant it uses the same character of fuel that defendants use, namely, bituminous or soft coal."

In the instant case the burden of the complaint is the use of soft coal instead of coke. It is true that the plaintiff himself uses soft coal. He denied that he used soft coal exclusively. But conceding that he used soft coal exclusively, the plaintiff's stack protrudes from the roof of his nine-story building, and the smoke only occasionally settles, under certain atmospheric conditions, into the defendant's laundry. If it be further conceded that such occasional infringement of the defendant's rights worked hurt and injury to it, the plaintiff is not for that reason alone, under the circumstances of this case, to be denied appropriate relief. In Robinson v. Bough, 31 Mich. 290, it was held that "it is no defense to a bill to enjoin a nuisance caused by the manner in which a business is conducted in a neighborhood; that some of the complainants have establishments in the same vicinity to which similar objections lie as are made to the one in question." In the opinion by Graves, C. J., the case of Gilbert v. Showerman, 23 Mich. 448 (cited approvingly by the Tennessee Supreme Court in Union Planters' Bank

&c. Co. *v.* Memphis Hotel Co., supra) is distinguished. Robinson *v.* Bough involved both smoke from the use of soft coal and noise, and also jars from steam hammers, resulting in sensible inconvenience to the plaintiffs and appreciable injury to the plaintiffs' dwellings. There the right to injunctive relief was fully sustained. See also *Georgia R. &c. Co.* v. *Berry,* 78 *Ga.* 744 (3), 748 (4 S. E. 10) ; *Brimberry* v. *Savannah, Florida & Western Ry. Co.,* 78 *Ga.* 641 (3 S. E. 274).

Is there, in case of nuisance produced by smoke alone, any satisfactory reason upon which the court of equity can withhold injunctive relief and remit the injured party to his action at law? The importance of the question justifies a further examination of the decided cases. In Crump *v.* Lambert, supra, Romilly, M. R., said: "The law on this subject is, I apprehend, the same, whether it be enforced by action at law or by bill in equity. In any case where a plaintiff could obtain substantial damages at law, he is entitled to an injunction to restrain the nuisance in this court. There is, I apprehend, no distinction between any of the cases, whether it be smoke, smell, noise, vapour, or water, or any other gas or fluid. The owner of one tenement can not cause or permit to pass over, or flow into, his neighbour's tenement any one or more of these things in such a way as materially to interfere with the ordinary comfort of the occupier of the neighbouring tenement, or so as to injure his property. . . The owner of the adjoining or neighbouring tenement, whether he has or has not previously occupied it,—in other words, whether he comes to the nuisance or the nuisance comes to him,—retains his right to have the air that passes over his land pure and unpolluted, and the soil and produce of it uninjured by the passage of gases, by the deposit of deleterious substances, or by the flow of water." And in that case an injunction was granted to "restrain the issuing of smoke and effluvia from a factory chimney, and the making of noise in the factory, although it was situated in a manufacturing town; it being proved that such smoke, effluvia, and noise were a material addition to previously existing nuisances." The doctrine of this case has been adopted by the English courts and generally by the courts of this country. Wood on Nuisances, § 507, and cases cited in notes.

In Lord Colchester *v.* Ellis, 2 Starkie's Ev. 538, the defendant, who was the owner of a building in London, erected a chimney in

his building for the purpose of having a fire in his saddle-room. The smoke from this chimney entered the plaintiff's dwelling about fifty yards distant, to the great annoyance of the plaintiff and his family and to the injury of his furniture. It appeared that the chimney was lower than the surrounding buildings and lower than the plaintiff's building. It was held that if the plaintiff would have a fire in his establishment, he must construct his chimney so as not to injure his neighbor's property or impair its comfortable enjoyment. In Sampson v. Smith, 8 Sim. 272, the plaintiff was the owner of a dwelling-house and shop. He had valuable furniture in his dwelling-house, and also a stock of merchandise in the shop. The defendants owned a manufacturing establishment on the opposite side of the street from the plaintiff's house and shop. In the manufacturing establishment were steam engines. Dense volumes of smoke issued from the defendant's flue, and the soot and cinders descended in volumes into the streets and into the shop and dwelling-house of the plaintiff, so as to injuriously affect the goods in the store and the furniture in the house, and to sensibly impair the comfortable enjoyment of the dwelling. It was held that the use of the steam engine with such results was a nuisance, and that the plaintiff was entitled to an injunction restraining the use of the same in the manner shown. The case is based upon the fact that the defendants' flue was not as high as the roof of the plaintiff's building and other buildings in the vicinity. Cartwright v. Gray, 12 Grant's Ch. (Ont.) 400, is an illustrative and instructive case. It there appeared that the nuisance arose principally from the fuel used by the defendant in running his steam engine located near the dwelling-houses of the plaintiffs, and from the failure on the part of the defendant to employ the best known appliances for discharging the smoke. Mowat, V. C., in delivering the opinion of the court, after citing and applying the doctrine laid down in Walter v. Selfe, 4 Eng. Law & Eq. 15, and St. Helen's Smelting Co. v. Tipping, 4 B. & S. 608, concluded as follows: "My opinion on the whole case is that the defendant has a right to use steam for propelling his machinery, but is bound to employ such reasonable precautions in the use of it as may prevent unnecessary danger to his neighbors' property from sparks, and unnecessary annoyance or injury to them from the noise or smoke; that though he seems, since the bill was filed, to have performed this duty as respects these

sparks and noise, he has done nothing in respect to the smoke; and that the plaintiffs' complaint in reference thereto is well founded. The decree will, therefore, require the defendant to desist from using his steam engine in such a manner as to occasion damage or annoyance to the plaintiffs, or either of them, as owning or occupying the houses mentioned in the bill."

The case of Galbraith *v.* Oliver, 3 Pittsburg (Penn.), 79, was an action to restrain the defendants, the proprietors of a flouring mill, from using soft coal to run their steam engine. In the course of the opinion by Johnson, J., it was said: "No occupation is more legitimate, and no erection more careful, than that of a flouring mill. There can be no denial of the owner's right to build one and to run it by steam. So of any other manufacturing establishment. They may not be agreeable to his next neighbor. He is not bound to consult the taste, pleasure, or preference of others; but he is bound to respect his neighbor's rights. . . While mills and manufactories are legal and necessary, it is neither legal nor necessary that they be so located as to interfere with the rights of others in the enjoyment of their possessions. When, therefore, they create noises that prevent sleep, or taint the atmosphere with vapors prejudicial to health or nauseous to the smell, or fill it with a smudge that depreciates its use for every purpose, they trench on the rights of persons affected thereby. Just here is where the line must be drawn. At this point they become nuisances." In Wood on Nuisances, § 502, the author, after reviewing many cases, English and American, says: "Thus it will be seen that even in the ordinary uses of buildings, the owners and occupants are bound not only to see to it that their chimneys are so arranged as to carry off the smoke developed therein, but are also bound to use such fuel as will produce the least obnoxious smoke." This doctrine is supported by many cases. See Rhodes *v.* Dunbar, 57 Pa. 274 (98 Am. D. 221); Sullivan *v.* Royer, 72 Cal. 248 (13 Pac. 655, 1 Am. St. R. 51); Campbell *v.* Seaman, 63 N. Y. 568 (20 Am. R. 567); Ross *v.* Butler, 19 N. J. Eq. 294 (97 Am. D. 654); Tuebner *v.* Cal. St. R. Co., 66 Cal. 171 (4 Pac. 1162); Hurlbert *v.* McCone, 55 Conn. 31 (10 Atl. 164, 3 Am. St. R. 17); Wesson *v.* Washburne Iron Co., 13 Allen (Mass.), 95 (90 Am. D. 181); Hutchins *v.* Smith, 63 Barb. (N. Y.) 252; Hyatt *v.* Myers, 71 N. C. 271. See also Joyce on Nuisances, § 136 et seq., and cases cited in notes.

The case of *Austin* v. *Augusta Terminal Ry. Co.*, 108 *Ga.* 671 (34 S. E. 852, 47 L. R. A. 755), was a suit by the owner of property to recover damages caused by the tracks of the railway company running in the rear of the plaintiff's premises. Injury from smoke and noise was claimed by the plaintiff. The suit really involved the construction of the clause of the constitution which protects private property from being "taken or damaged" for public purposes without just compensation. This court held, in the majority opinion by Chief Justice Simmons, that the plaintiff's property was not "taken or damaged" within the meaning of the constitution, under the special facts of the case. The Chief Justice was careful to note, that, "While holding that a lawfully constructed and lawfully operated railroad is not a nuisance, we are very far from holding that it may not be so operated in streets or on its private property as to become a nuisance. . . But when they do so they will get no protection from their charter; for the legislature does not legalize nuisances, whether they are maintained by manufacturing companies, railroads, municipalities, or private individuals." In the majority opinion much was said, arguendo, on the question of nuisances produced by noise and smoke. It was, however, observed that "the evidence does not show any unlawful, improper, or unusual noise, smoke, or movement of cars." Two Justices (Lumpkin, P. J., and Lewis, J.) dissented in that case. The dissenting opinion, by Lewis, J., discusses at length many English and American cases in line with the general doctrine laid down by Wood on Nuisances, heretofore referred to in this opinion. This court has said that "the foundation for the interference of equity in restraint of nuisances rests in the necessity of preventing irreparable mischief and multiplicity of suits. . . There must be such an injury as from its nature is not susceptible of being adequately compensated at law, or such as from its continuance or permanent mischief must occasion a constantly recurring grievance, which can not be otherwise prevented but by injunction. . . By continuing nuisance or constantly recurring grievance or permanent injury is not meant a constant and unceasing nuisance or injury, but a nuisance which occurs so often, and is so necessarily an incident of the use of property complained of, that it can be fairly said to be continuous, although not constant or unceasing." *Central Ry. Co.* v. *Americus Construction Co.*, 133 *Ga.* 392, 397

(65 S. E. 855).   See also *Farley* v. *Gale City Gas-Light Co.,* 105 *Ga.* 323, 337, 338 (31 S. E. 193) ; *Richmond Cotton Oil Co.* v. *Castellaw,* 134 *Ga.* 472(4) (67 S. E. 1126).   "If the injury caused to the adjacent property be continuing so as to cause a constantly recurring grievance, injunction is an available remedy."   *Tate* v. *Mull,* 147 *Ga.* 195(2) (93 S. E. 212).   The rule is well stated by Pitney, V. C., in Hennessey *v.* Carmony, 50 N. J. Eq. 616 (25 Atl. 374, 377) :   "The familiar ground on which the· extraordinary power of the court is invoked in such cases is that it is inequitable and ׳unjust that the injured party should be compelled to resort to repeated actions at law to recover damages for his injury, which, after all, in this class of cases, are incapable of measurement; and I presume to add the further ground that in this country such re-covery must result in giving the wrong-doer a power not permitted by our system of constitutional government, viz., to take the injured party's property for his private purposes upon making, from time to time, such compensation as the whims of a jury may give.   This ground of equitable action is of itself sufficient in those cases where the injury, though not irreparable, promises to be repeated for an indefinite period, and so is continuous in the sense that it will be persevered in indefinitely."

The English courts, it would seem, have not hesitated to grant injunctive relief in cases of nuisances produced by smoke alone. Many American courts, in such cases, have, upon various grounds, denied the right to such relief, and have remitted the complaining parties to their actions at law.   The principal, and usual grounds upon which injunctive relief has been denied may be referred to as the "de minibus," the "balance of injury," or the "public benefit," and the "discretionary" doctrines.   With respect to the first it is sufficient if the injury be appreciable, within the meaning of the term heretofore indicated in this opinion.   With respect to the second:   In Richards' Appeal, 7 P. F. Smith (Pa.), 113, 114, it was said:   "A chancellor will consider whether he would not do a greater injury by enjoining than would result from refusing and leaving the party to his redress at the hands of the court and jury." In Campbell *v.* Seaman, supra, the Supreme Court of New York said of this case that it was in direct conflict with the authorities of the State of New York and could not be there adopted as the law.·   The case is also criticised and explained in ·Wood on Nui-

sances (3d ed.), § 532. In line with Richards' Appeal is also Huckenstine's Appeal, 7 Pa. St. 102 (10 Am. R. 669). These cases have been distinguished and in part disapproved in the later Pennsylvania case of Sullivan v. Jones &c. Steel Co., 208 Pa. 540 (57 Atl. 1065, 66 L. R. A. 712). The doctrine of comparative injuries is of course clearly applicable in the grant or refusal of interlocutory injunctions to restrain nuisances. The doctrine has generally been applied in such cases, or in cases involving special facts. The weight of authority is to the effect that at the final trial the right to injunctive relief is not discretionary. See Clark's Equity, §§ 213, 214, 215, and numerous cases cited in notes. The discretionary doctrine is well disposed of by Pitney, V. C., in Hennessey v. Carmony, supra, when he says: "I have never been able to see how the question of the right of the complainant to an injunction on final hearing could ever be a matter properly resting in the 'discretion' of the chancellor, as I understand the force of that word in that connection. If by 'discretion' is here meant that the judge must be discreet, and must act with discretion, and discriminate, and take into consideration and give weight to each circumstance in the case in accordance with its actual value in a court of equity, then I say that that is just what he must do in every case that comes under his consideration; no more and no less. . . But if the word 'discretion,' in this connection, is used in its secondary sense, and by it is meant that the chancellor has the liberty and power of acting, in finally settling property rights, at his discretion, without the restraint of the legal and equitable rules governing those rights, then I deny such power. It seems to me that the true scope of the exercise of this latter sort of discretion in the judicial field is found in those matters which affect procedure merely, and not the ultimate right." The discretionary doctrine is not peculiar to proceedings to abate or enjoin nuisances, but applies generally to the grant of injunctions and other extraordinary equitable remedies. This court has said that "The exercise of the jurisdiction of courts of equity to decree a specific performance or the rescission of a contract, is not a matter of right in either party, but is a matter of sound and reasonable discretion in the court, which governs itself, as far as it may, by general rules and principles, but at the same time withholds or grants relief according to the circumstances of each particular case, when these

rules and principles will not furnish any exact measure of justice between the parties." See also *Bagwell* v. *Bagwell,* 72 *Ga.* 92(2); *Swint* v. *Carr,* 76 *Ga.* 322 (2 Am. R. 44); *Kirkland* v. *Downing,* 106 *Ga.* 530 (32 S. E. 632). However, in *Franklin* v. *Newsom,* 53 *Ga.* 580, it was ruled: "While it is a general rule that the right to specific performance is in the sound discretion of a court of equity, yet, in this State, that power is to be exercised by the jury under the evidence and charge of the court." This ruling was followed in *Miller* v. *Watson,* 139 *Ga.* 29, 31 (76 S. E. 585). See *Landrum* v. *Rivers,* 148 *Ga.* 774 (98 S. E. 477). This court has applied the doctrine in cases where the plaintiff prayed for specific performance of a fraudulent, illegal, or hard and unconscionable contract. It would seem to be a misapplication of the doctrine to deny one his equitable rights solely upon the ground of inconvenience to the opposite party or to the public. Neither the opposite party nor the public has the right, legal or equitable, to invade the clear legal rights of another. It has been said that the final settlement of property rights does not lie in the broad discretion of the chancellor, but in the clear legal and equitable rules which bind the chancellor himself. The case of Somerset Water &c. Co. *v.* Hyde, 129 Ky. 402 (111 S. W. 1005), where an injunction to restrain the defendant from discharging sewage upon the plaintiff's land was denied, and the case of City of Wheeling *v.* Natural Gas Co., 74 W. Va. 372 (82 S. E. 345), where the city was refused an injunction to restrain the defendant from supplying gas in violation of its franchise, because of the inconvenience it would cause to the public, forcefully illustrate what we believe to be a misconception of the extent of equitable power. The following cases, among others, support what we believe to be the true rule: Bristol *v.* Palmer, 83 Vt. 54 (74 Atl. 332, 31 L. R. A. (N. S.) 881, and note); Smith *v.* Rochester, 45 N. Y. 612 (6 Am. R. 146); 5 Pomeroy's Equity Jurisprudence, 530, 531; Kerr on Injunctions, *166; 1 High on Injunctions, § 739.

6. The case in hand is purely one for injunctive relief against a nuisance in consequence. Equity is asked to do no more than to restrain the defendant from using soft coal, that is, "such coal as throws out a black, dense smoke," and the evidence in the record is such as to authorize a finding by the jury that the use of coke was at once convenient and practicable. The court is not asked to abate

the defendant's laundry. If a case be otherwise made out, injunctive relief can not be denied the plaintiff, although the nuisance results from smoke alone. Whether the plaintiff was entitled to an injunction was a question for the jury.

Judgment reversed. All the Justices concur.